UNITED STATES ex rel. COFFMAN v. NORFOLK & W. RY. CO. et al.

(Circuit Court of Appeals, Fourth Circuit.  November 6, 1902.)

No. 437.

1. DISMISSAL—RIGHT OF PLAINTIFF BEFORE TRIAL.
    Under the rule of the common law, where no affirmative relief is asked
    for by the defendant a plaintiff may discontinue his action without
    prejudice at any time before trial, as a matter of right.

2. SAME—MANDAMUS—INEFFECTIVENESS OF WRIT.
    A proceeding for mandamus should be dismissed where it is made
    to appear by the relator before trial that the occasion for which the writ
    was demanded has passed, and that there is no longer any actual contro-
    versy between the parties, and no subject matter involved on which the
    judgment of the court can operate.

In Error to the Circuit Court of the United States for the North-
ern District of West Virginia.

B. M. Ambler, for plaintiff in error.

James F. Brown and John H. Holt (Joseph I. Doran, on the brief),
for defendants in error.

Before GOFF and SIMONTON, Circuit Judges, and BRAW-
LEY, District Judge.

GOFF, Circuit Judge.   The judgment complained of was rendered
by the circuit court of the United States for the Northern district
of West Virginia in a proceeding instituted by the plaintiff in error
under the act of congress of March 2, 1899, supplemental to the
interstate commerce act of February 4, 1887, to compel by man-
damus the Norfolk & Western Railway Company to furnish him a
sufficient number of cars to enable him to transport the output
of the Indian Ridge coal mine, one of a group of mines in what is
known as the "Pocahontas Coal Field," in West Virginia, to Lam-
bert's Point, a port on the navigable waters of the United States,
in the state of Virginia.  The relator prayed that the Norfolk &
Western Railway Company be required to furnish him a sufficiency
of transportation for said output to meet a specific demand created
by sales of coal to be delivered in vessels at the port of Lambert's
Point; such sales consisting of 2,000 tons for the barge R. R.
Thomas, to be delivered on January 14, 1901, and 2,450 tons to the
steamship Chattan, by January 21, 1901.  The relator set forth in
his petition that he resided in and was a citizen of the state of West
Virginia, and that the Norfolk & Western Railway Company is a
corporation organized and existing under the laws of the state of
Virginia, and doing the business of a common carrier over the line
of railroad owned by it, running from the city of Columbus, in the
state of Ohio, through the states of Ohio, West Virginia, and Vir-
ginia, to said port at Lambert's Point, passing en route through said
Pocahontas coal field and by the Indian Ridge mine, the product
of which he controlled.  The defendants other than the Norfolk

¶ 1. See Dismissal and Nonsuit, vol. 17, Cent. Dig. §§ 27, 33.

& Western Railway Company were certain officials of that company having charge and being in control of its transportation department. The relator alleged an unfair discrimination by said company against him, and in favor of other shippers, from other mines of the said coal field. The handling and transportation of the coal from that field were alleged to be interstate commerce and traffic, and the writ of mandamus as provided for in the act of congress mentioned was prayed for, commanding, compelling, and requiring the said railway company to move and transport the output from the Indian Ridge mine to the port at Lambert's Point, and to furnish the cars and proper facilities for the same, so that the relator would thereby be enabled to comply with his contracts to deliver coal at that point to the vessels and by the dates mentioned. On the filing of the petition, on the 15th day of January, 1901, the court issued the alternative writ of mandamus, returnable on the 17th of that month, on which day the defendants appeared and moved to quash the same, which motion was, after argument, overruled. The defendants then answered, denying the material allegations of the petition, and especially denying any discrimination whatsoever against the relator, or in favor of any other of its patrons. In such answer the respondents insisted that the alternative writ disclosed no right on the part of the relator which had been violated by them, or any of them, and they denied that he was entitled to the relief demanded. The relator objected to the filing of this answer, but his objections were overruled, and issue was thereupon duly joined, when the parties, by a written stipulation, waived a jury, and submitted all questions of law and fact to the determination of the court. Quite a number of witnesses were examined and other evidence introduced both on behalf of the relator and of the defendants, and the cause, after argument, was submitted, with the understanding that 15 days additional time should be allowed for the filing of briefs. On the 8th day of February, 1901, the relator filed his affidavit to the effect that all the cars asked for by him for the transportation of said coal had been furnished, that the coal had been transported to Lambert's Point, and that as the time when it was to have been delivered in cargoes, to wit, January 14th and January 21st, had then elapsed, the mandamus as prayed for would be wholly unavailable if issued. He therefore on that day moved the court that the proceeding be dismissed without prejudice, which motion the court then and there denied, and on the 15th day of June following rendered its decision denying the peremptory writ, quashing the alternative writ, and awarding costs against the relator. 109 Fed. 831. To this judgment the writ of error we are now considering was sued out.

A number of assignments of error are set forth in the record, and relied upon by the plaintiff in error, but we only find it necessary to consider the one relating to the refusal of the court to dismiss without prejudice. We think it entirely clear that the relator had the right to dismiss the proceeding he had instituted. Under the common-law practice, the plaintiff can discontinue his suit without prejudice at any time before a verdict is returned by the jury, or a judg-

ment entered in cases tried by the court. 4 Minor, Inst. 958; 2 Bart. Law Prac. 689; 2 Tuck. Bl. Comm. 299. The supreme court of the United States, in passing upon this question in Veazie v. Wadleigh, 11 Pet. 55, 9 L. Ed. 630, said:

"Before trial, then, the plaintiff may in many cases, as a matter of right, discontinue his cause according to the practice of the state courts, at any time when he is demandable in court. After a trial or verdict, he can do so only by leave of the court, which it may grant or refuse, in its discretion. But under ordinary circumstances, before verdict, it is almost a matter of course to grant it upon payment of costs, when it is not strictly demandable of right."

The limitations imposed under the statutes of West Virginia relating to this matter in no wise interfere with this rule of the common law, the existence of which is expressly recognized by the statute law of that state.

The defendants, in their answer, had simply denied the allegations contained in the petition. They had set up no counterclaim, and, from the nature of the case as made by the petition, could not have relied upon one; nor did they ask for any affirmative relief. The reason for the rule of practice referred to was therefore peculiarly applicable to this case, for it was quite apparent at the time when the motion to dismiss was made that no substantial benefit could accrue to the relator by the issuance of the writ, for the reason that the emergency because of which it had been asked for had, since the filing of the petition, and in fact during the pendency of the trial of the issues joined, entirely disappeared. Under the conditions then existing, the suggestion from the relator that there was no longer a cause for the pendency of the suit should have received the concurrence of the court, and, indeed, it would have been entirely proper for the court, of its own volition, to have directed a dismissal of the petition. It should also be borne in mind that the extraordinary writ of mandamus should never be issued when from the pleadings it is made to appear that it will prove fruitless and nugatory. The mandate of a court of justice should be issued only in cases where it can be made available. 4 Minor, Inst. 400; 19 Am. & Eng. Enc. Law, 756; High, Extr. Rem. § 14. A court will not exercise jurisdiction over a case in which it is powerless to grant relief. If it is made to appear that there is no actual controversy, involving real and substantial rights, between the parties, and no subject-matter upon which the judgment of the court can operate, the suit should be dismissed. Mills v. Green, 159 U. S. 651, 16 Sup. Ct. 132, 40 L. Ed. 293; Kimball v. Kimball, 174 U. S. 158, 19 Sup. Ct. 639, 43 L. Ed. 932.

At the time the motion to dismiss was made in the court below, there was no actual controversy pending between the parties to the record, the decision of which could have been carried into effect by judgment, and therefore the case should have been discontinued, and not held for the discussion of abstract propositions, which, however interesting, could not affect the matter in issue as it then existed.

The judgment complained of will be reversed, the order refusing to dismiss the petition on the motion of the plaintiff in error will be

set aside, and this cause will be remanded to the court from whence it came, with directions to dismiss the petition without prejudice. Reversed.