(C. D. 2002)

THE A. W. FENTON CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided June 5, 1958)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff.
*George Cochran Doub,* Assistant Attorney General (*Samuel D. Spector,* trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

RAO, Judge: This case is concerned with the matter of the dutiable status of an importation invoiced as " 'Siroco' agricultural dusters, latest model complete with 1-quart hopper, extension tube and

deflector." The collector of customs at the port of entry classified the merchandise in question as machines, not specially provided for, and, accordingly, assessed duty thereon at the rate of 13¾ per centum ad valorem, pursuant to the provisions of paragraph 372 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T. D. 52739.

It is not disputed that the involved articles are machines. Indeed, the evidence introduced by plaintiff, through the medium of the only witness in the case, the vice president of the ultimate consignee, confirms that the device in issue is a hand-operated, rotary, blower-type mechanism for dispersing a fine film of dust. The collector's assessment is, nevertheless, challenged upon the alleged premise that the subject merchandise is entitled to free entry within the provisions of paragraph 1604 of said tariff act as agricultural implements.

The question of what is an agricultural implement, within the scope of the statutory provision therefor, is not new to customs jurisprudence. The answer was first provided in the case of *United States* v. *Boker & Co.*, 6 Ct. Cust. Appls. 243, T. D. 35472, wherein, in holding certain hedge shears to be other than agricultural implements, the court stated:

> While, therefore, "agriculture" in its broad application may extend into and include elements of horticulture, viticulture, arbor culture, and other allied industries and pursuits, in its primary significance it extends to and embraces only those parts of all such as pertain to human and incidental animal subsistence—the substantial requirements of life (food) and possibly man's comfort (raiment), and not the merely pleasurable pursuits; the necessities and not the essentially pleasurable or ornamental.
>
> \* \* \* \* \* \* \*
>
> All these considerations imply and necessitate that the use of the implement must determine its classification whether or not an agricultural implement within the paragraph, and that that use, and the determinative fact, is chief use.

Since that first expression, the foregoing rule has been consistently applied, in numerous cases, and may now be deemed to be well-settled law, having, by virtue of several reenactments of more or less identical language, the sanction of legislative ratification and approval. See, for example, *United States* v. *Tower*, 6 Ct. Cust. Appls. 562, T. D. 36199; *United States* v. *Lewis & Conger*, 16 Ct. Cust. Appls. 91, T. D. 42753; *United States* v. *Spreckels Creameries, Inc.*, 17 C. C. P. A. (Customs) 400, T. D. 43835; *Wonham (Inc.) et al.* v. *United States*, 20 C. C. P. A. (Customs) 198, T. D. 45982; *United States* v. *S. S. Perry*, 25 C. C. P. A. (Customs) 282, T. D. 49395; *Wilbur-Ellis Co.* v. *United States*, 26 C. C. P. A. (Customs) 403, C. A. D. 47.

It seems clear, therefore, that an agricultural implement is one employed in farming or husbandry, which plays a direct role in the

production of food or clothing and is chiefly used for that purpose. Thus, the issue is posed: Do the involved machines meet this description in respect of character and use?

As heretofore observed, but one witness testified in this case. He was Lloyd A. Weaver, vice president of Wayside Gardens Co., ultimate consignee herein, and associated with that company for the past 11 years. The background of the witness was predominantly agricultural. He grew up on a farm, so to speak; studied agriculture at Michigan State University for 2 years; spent most of his life, from boyhood on, working in greenhouses, in California, Michigan, Ohio, and Long Island [sic]; and was thoroughly experienced in the propagating and raising of plants. Some of the plants which his company grows in its greenhouse are shade trees, fruit trees, berries, shrubs, asparagus, herbs, hedges, and windbreaks.

This witness described the merchandise in issue, a sample of which is in evidence as plaintiff's illustrative exhibit 1, as a machine for blowing insecticidal or fungicidal dusts on plants to destroy insects and/or prevent fungus growths and other plant diseases. He stated that it was especially useful in propagating beds or cold frames, or for dusting young plants in a greenhouse, but it would not be practical for use in dusting an acre of land.

It was the opinion of the witness that almost every farmer who grows his own vegetable plants would use a duster similar to the merchandise at bar, as would all types of gardeners, nurserymen, and operators of greenhouses. To use the words of the witness, "I would say in the propagating department of every nursery you would find a hand duster of a rotary type. * * * I am quite sure that every sizeable greenhouse has one, and I would venture to say that in this area [Cleveland] where there are a lot of greenhouses that grow large quantities of tomatoes or lettuce that every one of those greenhouses has a duster of this type."

In all his experience, the witness had never heard a device such as that here involved called anything other than a duster, nor did he know of any use for it other than to control or destroy insects.

Despite the apparent authoritative tenor of the testimony given by this witness, we are constrained to the view that it is inadequate for the purpose for which it was proffered. The most that can be said for it is that it establishes the character of the articles at bar, and reveals this witness' experience with it. It falls short of showing that the dusters are chiefly used as agricultural implements within the territorial and geographical requirements for such a determination.

In the case of *L. Tobert Co., Inc., American Shipping Co.* v. *United States*, 41 C. C. P. A. (Customs) 161, C. A. D. 544, our appellate court, in disposing of a similar proposition, observed:

While judicial notice may be taken of well known uses of an article, chief use is a question of actual fact, which, in a case of this character, should be established on the basis of positive testimony representative of an adequate geographical cross section of the nation. In other words, we are reluctant to disturb the presumption of correctness attaching to the collector's classification in the absence of unequivocal proof successfully contradicting the validity of such classification.

In the opinion below, Judge Lawrence, speaking for the court, succinctly stated:

> In order to succeed in their contention that the articles under consideration are not illuminating articles, it was incumbent upon plaintiffs to establish by competent evidence that the articles are not chiefly used for illuminating purposes. * * * The fact of chief use is difficult to prove. It ordinarily entails rather exacting evidence of use throughout the United States and cannot depend upon evidence of use locally. It appears from the record that the testimony of plaintiffs' witnesses to which reference has been made, *supra*, covered a relatively narrow field—in and about New York, with an isolated instance in Oklahoma—which certainly falls short of the requirements of proof of chief use. [Cases cited.]

It is to be noted that, although the witness had spent a considerable portion of his life in and around the growing of plants, his personal knowledge of such activities did not extend beyond the States of California, Michigan, Ohio, and assuming his mention of Long Island referred thereto, New York. Whether in areas of the United States other than those to which the experience of the witness related, dusters of the type in issue were devoted to the same uses, the record is silent. It is not the province of the court to speculate upon such matters, nor to draw the inference of application to a use from the fact of adaptability for a use.

From all that appears in this record, the witness was primarily a consumer, not a seller, of the articles at bar, and, although his testimony was not impeached, it does not raise the presumption that the only uses known to him were the only uses of such merchandise. See and compare, *Klipstein* v. *United States*, 1 Ct. Cust. Appls. 122, T. D. 31120.

Based upon the foregoing considerations, the claim of the plaintiff for free entry of the instant dusters as agricultural implements is overruled.

Judgment will be entered accordingly.