(C.D. 2326)

A. N. DERINGER, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided April 3, 1962)

*Barnes, Richardson & Colburn* (*E. Thomas Honey* of counsel) for the plaintiff.
*William H. Orrick, Jr.*, Assistant Attorney General (*Daniel I. Auster*, trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

MOLLISON, Judge: The ultimate consignee in the cases at bar imported certain wooden ladders from Canada. It has been stipulated that all of the ladders are similar in all material respects, and they may be described as follows: The ladders are from 16 to 22 feet in length, are made with half-round sides or rails of spruce, with rungs of either ash or oak. The width of each ladder becomes progressively narrower from the bottom to the top, at which point the ends of the two sides are joined.

Duty was assessed on the ladders at the rate of 16⅔ per centum ad valorem under the provision in paragraph 412, Tariff Act of 1930, as modified by T.D. 52373 and T.D. 52476, for manufactures of wood, not specially provided for. The protest claim is for free entry under the provision in paragraph 1604 of the said act for agricultural implements, not specially provided for.

The plaintiff's claim is based upon the contention that the ladders were designed for, and are chiefly, if not exclusively, used in picking fruit. As the issue has been developed by the parties, it appears that there is no dispute that fruit picking is an agricultural pursuit; that the term "agricultural implements," as used in paragraph 1604, *supra*, is a designation by use; and that the classification of imported merchandise as agricultural implements is dependent upon its chief use.

In support of its claim, plaintiff called as its witness the owner of the company which was the ultimate consignee of the ladders, a man of about 38 years' experience in the business, involving all types of ladders.

The gist of his testimony was that the ladders at bar were designed and used for fruit picking. As corroborating these facts, the witness pointed out that the sides or rails of the ladders were made of light-weight material, i.e., spruce, to keep weight to a minimum, so that the ladders can be carried about and put up easily in fruit tree orchards. Further, the bringing of the sides to a point at the top is for the purpose of being able to put the ladder up between the limbs or branches of the

trees and to be able to rest the top in the crotches of the trees. An open-top ladder would catch in the branches, knock off the fruit, and would be less suitable for resting in the crotches.

In the witness' own experience, such ladders had never been sold to anyone other than farmers for fruit-picking purposes, and he had not seen them used in any other manner. In his opinion, they would not be practical for anything else because the point would make the ladder unstable, causing it to turn over if used against a house or building. The witness' experience in the sale and use of the ladders was confined to New England.

The defendant called as its witness the appraiser of merchandise at Portland, Maine, who testified that he had seen ladders like those in issue used by window washers "because they can put it up in the corner of the window."

In rebuttal, plaintiff's witness testified that a window-cleaning ladder does not come to a point at the top, being from 4 to 5 inches wide there; that, at the top, there is a board which has a groove in it which goes against the sash when a window-cleaning ladder is used by resting the board against the sash; and that window-cleaning ladders are made in sections, rather than in long lengths, for ease in handling.

The witness stated that fruit-picking ladders would not be practical or safe for use in window cleaning and, in his experience, were not used for such purpose, and, conversely, window-cleaning ladders are not used for fruit picking.

We are of the opinion that, on the record presented, the plaintiff made out a *prima facie* case in favor of its contention that the ladders in issue are chiefly used for fruit picking and are agricultural implements within the meaning of that term, as used in paragraph 1604. We are further of the opinion that the defendant did not sustain the burden of adducing sufficient competent evidence to rebut that offered on behalf of the plaintiff.

We do not think that the testimony given by the witness for the defendant as to the use of ladders "like" those at bar for window-cleaning purposes can be considered to have rebutted or impaired the effect of the evidence offered by the plaintiff as to the chief use of such ladders for fruit-picking purposes. At the most, such testimony merely established that there may be another use for such ladders, but it by no means established that any use other than in fruit picking was the chief use thereof.

Defendant argues that plaintiff's evidence with respect to the use of ladders such as those at bar was limited to the New England area and is insufficient to constitute proof of chief use throughout the United States.

We find otherwise. From the testimony given by the plaintiff's witness as to the reasons and purposes for the particular design and

construction of the imported ladders, i.e., lightweight for easy carriage and pointed at the top, so that they may be thrust up between the limbs or branches without catching thereon or disturbing the fruit, the pointed top being, as well, a factor which would make them unsuitable or impractical for other uses, we think it is a fair inference that their chief use in one part of the country would be the same as in any other part of the country. The reasonableness of such an inference under such circumstances was well stated in the case of *United States* v. *F. W. Woolworth Co.*, 23 C.C.P.A. (Customs) 98, 100, T.D. 47765, as follows:

We are not unmindful of the rule that in order to establish "chief use" the evidence of use must relate to the United States generally, and not to a limited portion thereof. It may be proper to observe, however, that the question of whether "chief use" has been properly established depends upon the issues and the evidence in each case.

We think it is a proper deduction from the evidence, and from the character of Exhibits 1, 2, and 3, that the involved articles would be used in substantially the same manner, and by substantially the same class of people, in one section of the country as in another, and that evidence establishing their chief use in a large area of the country is sufficient under the rule.

Defendant argues that New England is not a large area of the country but is a "small * * * area of the United States." We may take judicial notice of the fact that the New England area, whether it be considered large or small by comparative geographical standards, is a place having numerous fruit tree orchards and that fruit growing is an active agricultural pursuit there. The way in which fruit grows on trees in New England is, without doubt, the way fruit grows on trees elsewhere in the United States, and, insofar as the picking of the fruit is concerned, the reasons which caused the design of the ladders at bar and which result in their chief use as fruit-picking ladders in New England are just as cogent and applicable elsewhere. Under these circumstances, the chief use of such ladders in New England can properly be deduced to be representative of the chief use of such ladders elsewhere in the United States.

Certainly, as indicated in the *Woolworth* case, *supra*, the chief use rule was never intended in all cases calling for its application to require the production of evidence as to chief use in every one of the United States or even in every geographical area of the United States. There may be situations in which the universal nature of the use and adaptation of the imported article are not so obvious and so well delineated in the record as in the case of the ladders at bar. Such cases might call for the production of evidence of chief use over a larger territorial area, but we are satisfied that that is not the situation in the case at bar.

We find that the facts of record and those of which judicial notice may be taken are sufficient to rebut the presumption of correctness

attaching to the collector's classification and to establish the correctness of plaintiff's claim under the agricultural implements provision. That claim is, therefore, sustained, and judgment will issue accordingly.