**HOFFSCHLAEGER COMPANY, Ltd.,
American Customs Brokerage Co.,
Inc., et al., Plaintiffs,**

v.

**UNITED STATES, Defendant.**

**C.D. 3440; Protests 66/30664–22023.**

United States Customs Court,
Second Division.

May 6, 1968.

Glad & Tuttle, San Francisco, Cal. (Edward N. Glad, San Francisco, Cal., and Robert Glenn White, Los Angeles, Cal., of counsel), for plaintiffs.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (Andrew P. Vance, and Alfred A. Taylor, Jr., New York City, trial attorneys), for defendant.

Before RAO and FORD, Judges.

RAO, Chief Judge:

The merchandise involved in these cases, which have been consolidated for trial, was invoiced as cane knives with curved edge and cane knives with straight edge. These articles were classified upon entry as knives with their handles under item 650.21 of the Tariff Schedules of the United States and as-

sessed with duty at the rate of 1 cent each and 17.5 per centum ad valorem.

Plaintiffs duly protested said assessment, alleging that the knives in issue are properly classifiable within the provisions of item 651.39 of the Tariff schedules of the United States as agricultural or horticultural hand tools and, as such, are entitled to entry free of duty.

The relevant statutory provisions read as follows:

Tariff Schedules of the United States, schedule 6, part 3, subpart E:

Knives not specially provided for elsewhere in this subpart, and cleavers, with or without their handles:

\* \* \* \* \* \*

Knives with their handles

\* \* \* \* \* \*

Other:

\* \* \* \* \* \*

Item 650.21      Other ............1¢ each + 17.5% ad val.

Hand tools (including table, kitchen, and household implements of the character of hand tools) not specially provided for, and metal parts thereof:

\* \* \* \* \* \*

Other hand tools:

Item 651.39      Agricultural or horticultural tools, and parts thereof ...................Free

---

Samples of the importations at bar were introduced into evidence during the course of the trial. They are knives with either a straight edge, as illustrated by plaintiffs' exhibit 1, or a curved edge, as shown by plaintiffs' exhibits 2 and 3, each with a hook at the end of the blade, opposite to the cutting edge. There was also received in evidence, as plaintiffs' exhibit 4, a memorandum of sales of these cane knives by plaintiff Hoffschlaeger Company, Ltd., which outlines amounts sold to plantations and plantation agents as opposed to amounts sold to other outlets since the firm began importing them in February 1965.

Three witnesses testified on behalf of the plaintiffs. The first was Mr. Yasui Chi Hirata, for the last 6 years president and general manager of the plaintiff, Hoffschlaeger Company, Ltd. He testified that the firm, with which he had been associated for 30 years as salesman and warehouseman before becoming president, had imported these knives since February 1965 and distributed them to all the islands of Hawaii. During this period, approximately 10,000 knives had been sold by his company.

Miss June Kemioke, the second witness for the plaintiffs, identified herself as secretary to the president and a director of Standard Trading Company, Inc., an import-export wholesaler that had handled cane knives for several years. Miss Kemioke, an employee of the firm for 12 years, had become familiar with these items by ordering and handling them. She also had seen them at the makers in Japan.

The last witness for the plaintiffs, Charles E. Baker, stated that, for the past 9 months, he has been the manager of the machinery products unit at Amfac, Inc., a sugar factor and wholesaler. Prior to that, he was a mechanical engineer for Theo. H. Davies Company, also a sugar factor and wholesaler. These positions have required Mr. Baker to visit sugar plantations on all the major islands of Hawaii on an average of once a week. In the course of these visits, he has had an opportunity to learn the uses of cane knives on the plantations.

Through the testimony of these witnesses, the following facts were established. Historically, the article in issue, a large knife with a wide blade that has a hook at its end, has been used in Hawaii to harvest sugarcane. When so employed, the blade is used to cut the plant; then the fallen stalk is picked up by means of the hook. However, during the last 20 or 30 years, there has been a change from total hand harvesting to mechanized harvesting, so that cane knives now have been relegated to use in those situations where machines are not practical. The record established that hand labor, at present, is employed only to harvest seed cane and to trim cane growing on rough terrain.

Mr. Baker personally had seen cane knives used only on sugar plantations, but Mr. Hirata and Miss Kemioke testified that they have seen them used also by farmers, homeowners, and landscaping firms to clear brush and shrubbery, and that these witnesses themselves have made such use of them.

Defendant introduced the testimony of four witnesses. The first was Mr. Terry Aratani, an engineer employed by the Highway Division of the Department of Transportation of the State of Hawaii to oversee all the highway maintenance on the Island of Oahu. He testified that his department stocks the knives in issue, which are used on construction projects to clear the line of sight for the survey traverse and on maintenance projects to clear brush and cut shrubs.

Mr. Ernest Freitas, defendant's second witness, identified himself as the supply officer of the Fort Shafter, Hawaii, Area Engineers. As part of his duties, he recently purchased 50 knives represented by plaintiffs' exhibit 2. Twenty-five have been placed on a stand-by basis for use by the fire department in case of brush fire, while the rest are used by the occupants of quarters to cut down stumps and shrubbery. The personnel of the ground section of the fort also are issued cane knives that they use to trim and cut down trees.

Defendant's remaining witnesses, Mrs. Lilly Ihare and Mrs. Ruth Park, employees of department stores in Hawaii, stated that they sell, and have sold for several years, knives such as the samples in evidence. In the course of their duties, they have become familiar with the uses made of these items by their customers. The testimony of both established that purchasers use the cane knives to clear or trim brush, hedges, and trees, or to cut down banana and guava stumps.

In addition to the above testimony regarding the uses of cane knives they have learned through their work, defendant's four witnesses also testified to the uses they have made, or have seen made of these articles. The uses were the same as those enumerated by the witnesses for the plaintiffs, with certain additions. Mrs. Ihare and Mrs. Park also use cane knives to cut wood for their outdoor barbecues, while Mr. Freitas and Mrs. Park use them to cut coconut leaves and tree limbs to the size required for garbage collection. .

On the record thus presented, the question which we are called on to determine herein is whether the knives at bar are agricultural or horticultural hand tools and, therefore, within the purview of item 651.39 of the Tariff Schedules of the United States, as contended by the plaintiffs, or are knives with their handles, not specially provided for, within item 650.21 of said schedules, as classified by the customs authorities.

It is obvious that the provision for "agricultural or horticultural tools" in item 651.39, supra, is a designation which enumerates a class of articles in accordance with their use. Such a designation is subject to the limitations imposed by Rule 10 of the General Headnotes and Rules of Interpretation of the Tariff Schedules of the United States, which reads as follows:

10. *General Interpretative Rules.* For the purpose of these schedules—

\* \* \* \* \* \*

(e) in the absence of special language or context which otherwise requires—

(i) a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of articles of that class or kind to which the imported articles belong, and the controlling use is the chief use, i. e., the use which exceeds all other uses (if any) combined.

■ While "chief use" is thus established to be the criterion for ascertaining use when that characteristic is a relevant consideration, it does not appear that the rules of the tariff schedules provide complete requirements of proof of chief use. But the concept of chief use as the determinant of use provisions is a familiar one in customs jurisprudence which has often occupied the attention of the courts, and rules for proving it have long since been explicitly formulated. In one of the most frequently quoted cases on the subject, to wit L. Tobert Co., Inc., et al. v. United States, 41 CCPA 161, 164, C.A.D. 554, chief use is defined as an issue of fact which must be "established on the basis of positive testimony representative of an adequate geographical cross section of the nation."

■ It is also well settled that evidence limited to use in one state, or in one part of the country, is insufficient to fulfill the territorial requirement of proof of chief use, unless it be shown that the area of established use is the principal or only area of use of the article in issue. Thus for example, proof of chief use in the State of California was held, in Pacific Guano & Fertilizer Co. et al. v. United States, 15 Ct.Cust. Appls. 218, T.D. 42240, insufficient to establish chief use in the United States. In The A. W. Fenton Co., Inc. v. United States, 40 Cust. Ct. 327, C.D. 2002, it was found that testimony by a thoroughly qualified witness as to uses in California, Michigan, and Ohio was inadequate to meet the territorial requirement since uses in other parts of the country could differ. In the case of Bob Stone Cordage Co. et al. v. United States, 51 CCPA 60, C.A.D. 838, although witnesses testified to uses in Nebraska, Oklahoma, Kansas, Arkansas, Missouri, and Iowa, the court decided that, since the principal area of use was the entire Middle West, such evidence could not establish chief use in the nation.

■ In light of the above principles, it is clear that, even if it be assumed that use as horticultural or agricultural tools in Hawaii has been established, since the evidence is limited to Hawaii, which has not been shown to be the principal area of use, chief use has not been proven unless, as the plaintiffs contend, the peculiar character and special design of the articles at bar demonstrate *per se* that their use throughout the country could be only that use testified to by the witnesses. As authority for this proposition, plaintiffs cite the cases of United States v. Bruce Duncan Co., Inc., etc., 50 CCPA 43, C.A.D. 817, United States v. F. W. Woolworth Co., 23 CCPA 98, T.D. 47765, and A. N. Deringer, Inc. v. United States, 48 Cust.Ct. 138, C.D. 2326.

These decisions are clearly distinguishable from the instant case. The court in the *Bruce Duncan* case, supra, holding that the presumption of correctness attaching to the collector's classification can be overcome by the effect of the samples themselves, decided that the snack sets in issue were sufficiently distinct in purpose and intended use to en-

able it to find that the sets were tableware.

The *Woolworth* case, supra, which involved the use of large, inflatable balls, stands for the proposition that evidence establishing use in a large area of the country is sufficient if it may be deduced from such evidence and from the samples that the merchandise would be used in substantially the same manner, and by substantially the same sort of people, in one section of the country, as in another.

The article in issue in the *Deringer* case, supra, was a lightweight ladder whose sides came to a point at the top. The evidence, which was limited to the New England area, established that the ladder's only practical use was in the picking of fruit. The court held that, since fruit grows in the same manner throughout the country, it was a fair inference that the chief use in New England would be representative of the chief use in the United States.

We are of the opinion that none of these cases is decisive of the issue of the chief use of cane knives. While the exhibits in the above decisions were of such a nature that the court could find that their use would be substantially the same throughout the country, the merchandise in issue in the instant case, a knife with a wide blade that has a hook on its end, is not of such an obvious design that only one use is apparent from its appearance. The testimony as to uses in Hawaii, and the impression of the samples themselves, are not sufficient to rule out different uses in other parts of the country. Moreover, since the testimony tended to show that the uses of cane knives have been changing, even in the area covered by the testimony, the court cannot speculate on the likelihood that any one of these uses would prove consistent throughout the United States.

More relevant to the situation in the instant cases is that which obtained in the *Tobert* case, supra, wherein the court refused to take judicial notice of the chief use of candelabra, holding that the requirements of proof of chief use had not been satisfied when the testimony was limited to use in the New York area, with an isolated instance in Oklahoma. It is clear that we cannot find that cane knives, whose use is definitely less within general knowledge than that of candelabra, would necessarily be used in the same manner throughout the United States.

Neither do we regard as controlling, United States v. S. S. Perry, 25 CCPA 282, T.D. 49395, cited by plaintiffs as authority for the proposition that proof of chief use in one area can be inferred to be the chief use in the United States. This case, which is applicable only in a situation in which the area referred to in testimony is established as the principal area of use, is clearly distinguishable from the case at bar, where no evidence was presented to prove that Hawaii is the center of sugarcane production in the United States. Plaintiffs' witnesses, who make no mention of the total volume of cane knives imported into the country, what percentage of these are used in Hawaii, or the uses made of them in other sugarcane producing areas of the United States, do not show that scope of experience necessary to enable us to find that their testimony established the chief use of cane knives in the United States.

Therefore, neither the testimony of the witnesses nor the exhibits in evidence have established the chief use of the cane knives in the United States. This failure to meet the geographical requirement of proof of chief use negates the necessity of a decision on the issue of whether the knives are agricultural or horticultural implements. Even if the record proves that cane knives are agricultural or horticultural hand tools in Hawaii, and we do not so conclude, the presumption of correctness that attached to the classification of the district director has not been overcome, and the plaintiffs' claim must be overruled. The interpretation to be given the inclusion of the phrase, horticultural hand tools, under item 651.39, supra, may well be left for future litigation.

Based on the foregoing considerations, the claim of the plaintiffs for free entry of the instant knives as agricultural or horticultural hand tools is overruled.

Judgment will be entered accordingly.

FORD, J., concurs.