**WESTERN OILFIELDS SUPPLY CO.**
**v.**
**UNITED STATES.**

C.D. 3722; Protests 66/80082–88361 and 66/80083–88367.

United States Customs Court,
Second Division.

Feb. 27, 1969.

Glad & Tuttle, Los Angeles (Robert Glenn White, Los Angeles, of counsel), for plaintiff.

William D. Ruckelshaus, Asst. Atty. Gen. (Bernard J. Babb and Herbert P. Larsen, New York City, Trial Attys.), for defendant.

Before RAO, Chief Judge, FORD, Judge, and WILSON, Senior Judge.

WILSON, Senior Judge:

The protests here involved relate to the classification of certain merchandise described on the invoices as "VALVE KEY OPERATING NUTS." The articles involved were classified by customs officials as pipe tools (except cutters), wrenches, and spanners, and parts thereof under item 648.97 of the Tariff Schedules of the United States, and duty was assessed thereon at the rate of 22.5 per centum ad valorem.

The plaintiff interposed several alternative claims in protesting said classification. Initially it contended that the subject merchandise consists of parts of agricultural implements free of duty under item 666.00 of the Tariff Schedules of the United States. Later, by amendment, it claimed the subject merchandise free of duty under item 662.45, as sprayers suitable for agricultural or horticultural use, or alternatively, under item 662.50 of the Tariff Schedules of the United States, as other similar appliances

for spraying liquids and parts thereof with duty at the rate of 10 per centum ad valorem.

The pertinent provisions of the Tariff Schedules of the United States read as follows:

## SCHEDULE 6.—METALS AND METAL PRODUCTS

### Part 3.—Metal Products

#### Subpart E.—Tools, Cutlery, Forks and Spoons

\* \* \* \* \* \* \* \*

Pliers, nippers, and pincers \* \* \* and other pipe tools; spanners and wrenches; files (except nail files), and rasps; all the foregoing which are hand tools, and metal parts thereof:

\* \* \* \* \* \* \* \*

648.97   Pipe tools (except cutters), wrenches, and spanners, and parts thereof ............22.5% ad val.

## SCHEDULE 6.—METALS AND METAL PRODUCTS

### Part 4.—Machinery and Mechanical Equipment

#### Subpart A.— \* \* \*

\* \* \* \* \* \* \* \*

Mechanical appliances, whether or not hand operated, for projecting, dispersing, or spraying liquids or powders; fire extinguishers, whether or not charged; spray guns and similar appliances; steam- or sand-blasting machines and similar jet projecting machines; all the foregoing (except automatic vending machines) and parts thereof:

\* \* \* \* \* \* \* \*

662.45   Sprayers, self-contained, having a capacity over 5 gallons, suitable for agricultural or horticultural use ...................... Free

662.50   Other .................................. 10% ad val.

## SCHEDULE 6.—METALS AND METAL PRODUCTS

### Part 4.—Machinery and Mechanical Equipment

#### Subpart C headnote:

1. The provisions of item 666.00 for "agricultural and horticultural implements not specially provided for" do not apply to any of the articles provided for in schedule 6, part 2, part 3 (subparts A through F, inclusive), part 5, or part 6, or to any of the articles specially provided for elsewhere in the tariff schedules \* \* \*.

666.00   Machinery for soil preparation and cultivation, agricultural drills and planters, fertilizer spreaders, harvesting and threshing machinery \* \* \* and agricultural and horticultural implements not specially provided for, and parts of any of the foregoing Free

The only evidence in this case was introduced by the plaintiff. It consists of the oral testimony of one witness and two exhibits. Plaintiff's exhibit 1 is a representative sample of the imported merchandise referred to in the invoices as "VALVE KEY OPERATING NUT," and exhibit 2 is a valve elbow with the imported article attached to demonstrate its use.

The importation in controversy may be described as a hollow metal cylindrical sleeve approximately 1½ inches in length and 1¼ inches in diameter. The hollowed inner surface is square while the outer surface is round. The article at issue as it appears as a part of the valve elbow is shown in exhibit 2. Apparently, the article at issue was classified as a part of a pipe tool, spanner or wrench because the handle of the valve elbow may be turned by hand, thus turning the hollow metal sleeve.

The sole witness, Walter G. Lake, was the secretary-treasurer and engineer of the Western Oilfields Supply Co., the plaintiff. Lake designed the article in issue for his company. He also purchased the company's equipment.

The witness stated that the subject merchandise is used as a part of a valve elbow for irrigation systems by his company. The irrigation system, he explained, has a main pipe line running along one side of the field with half valves every 50 feet. The valve elbows are fitted with smaller pipes which extend across the field. The valve elbow is attached over the main pipe at the site of the half valves. Thus the flow of water from the main pipe is diverted to the smaller pipes crossing the field and controlled by opening and closing the valve. The article in issue is that part of the elbow valve which connects it to the half valve stem in the main irrigation pipe. In this manner, the witness stated, the importation in question is exclusively used with the valve elbow which is employed only with his company's agricultural irrigation system. The system, he stated, is commonly used in agricultural irrigation in the States of Texas, California, Idaho, and Washington.

Upon this proof, plaintiff contends that the article at bar is, by design and chief use, a part of an agricultural implement which is not a pipe tool.

On the other hand, the defendant asserts that the article is obviously a part of a pipe tool, as classified, because the square head of the valve stem on the main irrigation line fits into the square-shaped sleeve of the valve elbow, and permits the valve to be opened or closed by turning the handle of the elbow valve. It is argued therefore that plaintiff has failed to overcome the presumption of correctness which attaches to the classification.

■ There is of course a presumption in all classification cases that the classification made by the customs officials is correct and the burden is upon the party seeking to overcome that classification to prove otherwise. Atlantic Aluminum & Metal Distributors, Inc. v. United States, 47 CCPA 88, C.A.D. 735; Loewenthal Trimming Corp. v. United States, 39 CCPA 149, C.A.D. 477.

■ These presumptions are not evidence, however, nor can they be weighed against evidence. S. S. Kresge Co. v. United States, 25 Cust.Ct. 89, C.D. 1269. The question before us is whether the instant record overcomes the rebuttable presumption relied upon by the defendant and establishes that the subject items are not pipe tools which are hand tools.

■ It would appear that these articles are tools, and that they are used in connection with pipes. But are they tools which are manipulated by hand? For if they are not, they are not properly classified as pipe tools which are hand tools.

The question of what constitutes hand tools has not been extensively explored in customs jurisprudence. It was, however, the subject of in depth considera-

tion in the case of P. H. De Wilde and Harper, Robinson & Co. v. United States, 35 Cust.Ct. 295, Abstract 59420, wherein, on page 296, it was stated:

The only function of the involved vises is to "hold." They, therefore, fall squarely within the language of said paragraph 352, excluding from the provisions of that paragraph "holding * * * devices." The next question is: Are these vises hand tools? As supporting their contention that these vises are not hand tools, plaintiffs quote the following definition of a hand drill from Webster's New International Dictionary:

hand drill. a. A small portable drilling machine, resembling a breast drill, designed to be held and operated by hand.

In the Encyclopedia Britannica, volume 22, page 286, we find the following:

In beginning a survey of tools it is necessary to draw the distinction between hand and machine tools. The former class includes any tool which is held and operated by the unaided hands; e. g., a chisel, plane or saw.

In view of the fact that counsel have not cited to us, nor has our own research revealed any judicial definition of a hand tool, we shall accept for the purpose of this case the definition of that term, quoted above from the Encyclopedia Britannica. Under the above definition, the involved vises are not hand tools, because they are not held and operated by the unaided hands * * *.

Although the importation at bar is part of a tool operated by hand, it is not a hand tool or a part thereof within the preceding definition. As imported it is a small sleeve easily carried about in the hand, but according to the witness inoperable without being attached to a valve elbow. The article in question is designed especially to be attached to the valve elbow, which cannot be considered a hand tool, since it is not held and/or operated by the unaided hand. As part of the valve elbow the involved importation is used to turn the irrigation pipe valve stem on and off, as defendant argues. However, before it is so employed, the valve elbow is placed over the site of the valve stem and hooked onto the main pipe line. Then, the valve elbow is fitted with a smaller pipe which extends across the field. In this stationary position the valve elbow diverts the water from the main pipe into the smaller pipe, after the handle is turned opening the valve stem. In this manner the handle of the valve elbow is hand operated opening and closing the valve stem of the main irrigation pipe line. The mere act of hand turning the valve elbow handle cannot be considered a proper basis for classification of the article in question as a hand tool. There is no hand operation of the valve elbow unless, and until, it is placed in a fixed stationary position. Since the valve elbow is not a hand tool, neither is the sleeve which is only a part of the elbow. For these reasons the importation cannot be considered a hand tool or part thereof.

Although the item at bar is not a hand tool, it is unquestionably a part of the valve elbow and, therefore, it is claimed that the subject merchandise is entitled to free entry as agricultural implements and parts thereof within the intendment of item 666.00 of the Tariff Schedules of the United States.

■ The issue of what is an agricultural implement, within the scope of the statutory provision therefor, is not new to customs jurisprudence. An early answer was provided in the case of United States v. Boker & Co., 6 Ct.Cust.Appls. 243, T.D. 35472, wherein certain hedge shears were held to be other than agricultural implements. The court said, pages 244–245:

While, therefore, "agriculture" in its broad application may extend into and

include elements of horticulture, viti-culture, arbor culture, and other *allied* industries and pursuits, in its primary significance it extends to and embraces only those parts of all such as pertain to human and incidental animal sub-sistence—the substantial requirements of life (food) and possibly man's com-fort (raiment) * * *.

\* \* \* \* \* \*

All these considerations imply and necessitate that the use of the imple-ment must determine its classification whether or not an agricultural imple-ment within the paragraph, and that that use, and the determinative fact, is chief use.

The foregoing rule has been consist-ently applied over the course of the years, under successive re-enactments of more or less identical language, indicating con-gressional approval and ratification of judicial interpretation. United States v. Guth Stern & Co., Inc., 21 CCPA 246, T.D. 46777; United States v. Bassichis Co. et al., 16 Ct.Cust.Appls. 410, T.D. 43133.

■ Item 666.00 of the Tariff Sched-ules of the United States as quoted, *su-pra*, substantially follows the prior legis-lative language and also expands the provisions to include horticultural im-plements. Therefore, it seems clear that the test for determining what constitutes an agricultural implement is not only substantially the same as it was under prior law, but has been enlarged to apply to horticultural implements. This test, as stated in the case of The A. W. Fenton Co., Inc. v. United States, 40 Cust.Ct. 327, C.D. 2002, provides—

* * * that an agricultural imple-ment is one employed in farming or husbandry, which plays a direct role in the production of food or clothing and is chiefly used for that purpose. Thus, the issue is posed: Do the in-volved machines meet this description in respect of character and use?

In like manner, in the case at bar the question is, do these articles meet this description in respect of character and use?

■■ Where, as here, chief use is the determinative criterion for resolving the controversy, under settled principles of law proof of use must be predicated upon positive testimony as to use throughout a substantial geographic segment of the nation. L. Tobert Co. Inc., et al. v. Unit-ed States, 41 CCPA 161, C.A.D. 544; Hoffschlaeger Company, Ltd., American Customs Brokerage Co., Inc., et al. v. United States, 60 Cust.Ct. 497, C.D. 3440. Chief use may also be established by proof of circumstances under which the nature of the article and its adaptation for use are so characteristic that its use in one area of the country can be con-sidered typical and the strict geographi-cal requirement of proof of use dispensed with. A. N. Deringer, Inc. v. United States, 48 Cust.Ct. 138, C.D. 2326.

Although only one witness testified with respect to the use of the subject merchandise, his experience and educa-tion were extensive in the field of irri-gation systems. The witness identified the articles in issue and stated that he designed, sold, and imported them es-pecially for use in an irrigation system. He explained in detail the operation of the article and stated it had no other use, but in the irrigation system. It was the opinion of this witness that the irriga-tion equipment supplied by his company was most widely used in the State of Texas. However, its use was also con-siderable in the States of California, Washington, and others.

This testimony establishes *prima facie* that the article at issue is chiefly used and designed to be used as a part of an irrigation system. As this court has stated in the case of Voss Int. Corp. v. United States, 61 Cust.Ct., C.D. 3544:

Executives concerned with design-ing, framing specifications, ordering, importing, selling, distributing, and promoting an article have to know its chief uses and may properly give tes-timony as to such uses. * * *

Also, as stated by this court in the case of F. B. Vandegrift & Co., Inc. v. United States, 56 Cust.Ct. 103, C.D. 2617, concerning proof of chief use of curling irons:

> Determining chief use is also a matter for common sense. Here we have articles before us which, we are told, are used in the home by Negro women to straighten and afterwards curl their hair. We had the benefit of testimony by the man who designed these articles, who imports them, and who has promoted their sale all over the United States. There is no scintilla of evidence, either in the appearance of the articles themselves, or in the testimony of any other possible use, except beauty parlors. * * *

Here, the record shows that the article at issue by design is used exclusively as a part of an elbow valve which is used in agricultural irrigation systems. The witness denied that the item was like a valve key or could be used as a valve wrench.

■ Even though the record has not specified a single agricultural crop or product served by the irrigation system, there is ample unrebutted evidence by the plaintiff that the system is used in agricultural irrigation, and we may take judicial notice that irrigation is essentially an agricultural activity.

The Government's alternative contention that the article should be classified under item 680.22—

> Taps, cocks, valves, and similar devices, however operated, used to control the flow of liquids, gases, or solids, all the foregoing and parts thereof:
>
> Hand-operated and check:
>
>    *    *    *    *    *    *    *    *
>
> 680.22    Other ...............................22.5% ad val.

of the tariff schedules as valves is without merit since valves which are agricultural implements are, nevertheless, more specifically provided for as agricultural implements, and are not excluded from item 666.00 by virtue of the headnote in schedule 6, part 4, subpart C, which states as follows:

> 1. The provisions of item 666.00 for "agricultural and horticultural implements not specially provided for" do not apply to any of the articles provided for in schedule 6, part 2, part 3 (subparts A through F, inclusive), part 5, or part 6, or to any of the articles specially provided for elsewhere in the tariff schedules * * *.

■ We are of the opinion that the record in this case establishes that the instant articles are not pipe tools, wrenches, and spanners or parts thereof, as classified by the customs officials. They are more specifically provided for, as claimed, as agricultural implements entitled to free entry. The claim in the protest to that effect is sustained. All other claims are hereby overruled.

Judgment will be entered accordingly.