(C.D. 4068)

Marmax Trading Corp. v. United States

United States Customs Court, First Division

(Decided August 28, 1970)

*Allerton deC. Tompkins* (*Irving Levine* of counsel) for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Robert E. Burke*, trial attorney), for the defendant.

Before WATSON, MALETZ, and RE, Judges

WATSON, Judge: This protest places in issue the classification of an importation consisting of 20-foot lengths of chain with snaps at either end and a swivel joint in the middle. The merchandise was classified pursuant to item 790.10 of the Tariff Schedules of the United States which provides for dog leashes, collars, muzzles, harnesses and similar dog equipment. Plaintiff makes alternative claims for classification pursuant to item 652.24 of said tariff schedules as iron or steel chains under five-sixteenths of an inch in diameter or pursuant to item 666.00 as agricultural implements not specially provided for.

At a pretrial conference, the parties stipulated that the merchandise is in chief value of iron or steel, that its links are essentially round in cross section and under five-sixteenths of an inch in diameter and that the importation is not anchor or stud link chains or chains used for the transmission of power.

The relevant statutory provisions are as follows:

STATUTES

Tariff Schedules of the United States:

Classified: Schedule 7, Part 13, Subpart A

790.10   Dog leashes, collars, muzzles, harnesses, and
          similar dog equipment_____    12% ad val.

Claimed: Schedule 6, Part 3, Subpart F

      Chain and chains, and parts thereof, all the
      foregoing of base metal not coated or plated
      with precious metal:
         Of iron or steel:

\*        \*        \*        \*        \*        \*        \*

Chain or chains (except the forego-
ing) the links of which are of stock
essentially round in cross section,
and parts thereof:

652.24            Under 5/16 inch in diameter____      1.7¢ per lb.

Schedule 6, Part 4, Subpart C

666.00    Machinery for soil preparation and cultiva-
tion, * * * and agricultural and horticul-
tural implements not specially provided
for, and parts of any of the foregoing____      Free

It is important to note in commencement, that the classification of this merchandise pursuant to the above item 790.10, carried with it the presumption that it is chiefly used for such purposes, in this case, evidently as dog leashes or similar dog equipment.

It is, accordingly, plaintiff's burden to establish either some other chief use of the instant merchandise or that there was no chief use.

Our review of the testimony of plaintiff's two witnesses reveals that they did not supply sufficient evidence to satisfy either of the above two criteria. They gave testimony as to a variety of uses for the instant merchandise on dogs, sheep, goats, children and various inanimate objects.

A short excerpt will adequately convey the scope of their testimony.

Q. By what name do you sell the articles here under protest?—A. As 20 foot tie-out chain.

Q. Have you personally seen this kind of chain being used?—A. Yes.

Q. In many places?—A. Very many places.

Q. Where?—A. On farms, on the lawn, at the beach, swimming pool.

Q. In what areas of the United States have you seen it being used?—A. In the areas I have traveled.

Q. And that would be?—A. A good part of the United States.

Q. Do you sell these chains for a particular use?—A. We sell them for use as chains.

Q. And how, according to your knowledge and experience, are these chains used?—A. They are used on the porch; I use them on my terrace; they are used at the beach to tie beach chairs together. They are used to tie an animal, calf, a goat; to give a dog a radius of movement.

Q. You mentioned on a porch. How would they be used on a porch?—A. I am using them on my terrace to open a door, and to prevent the wind from slamming the door. I am using them to

tie my chairs, my terrace chairs to the wall to prevent them from being blown away by the wind.

Q. Do you know of any additional uses?—A. Well, the use is so vast as chain, I think I mentioned what has occurred to me. If I think, I can probably mention more uses.

Mere testimony as to other uses is not sufficient to disprove a presumed chief use. The decision in *The Francesco Parisi Fwdg. Corp.* v. *United States*, 62 Cust. Ct. 207, C.D. 3730, 296 F. Supp. 315 (1969), *aff'd Id.* v. *Id.*, 57 CCPA 84, C.A.D. 981 (1970), expresses the requirements of proof quite well.

> * * * It is not enough merely to enumerate a variety of uses to which an importation is put without specifying with particularity the extent to which such uses are substantial. *United States* v. *Kaufman & Co.*, 14 Ct. Cust. Appls. 264, T.D. 41881, *United States* v. *Gardel Industries*, 33 CCPA 118, C.A.D. 325. There is nothing in the record to indicate that the uses to which plaintiff's witness testified are not tentative, exploratory or fugitive. There is nothing to counteract the presumed predominance of the importation's use in the practice of photogrammetric surveying.

See also, *Hoffschlaeger Company, Ltd., American Customs Brokerage Co., Inc., et al.* v. *United States*, 60 Cust. Ct. 497, C.D. 3440, 284 F. Supp. 787 (1968).

We are of the opinion that the testimony of plaintiff's witnesses has failed to overcome the presumption that the importation is designed and used primarily to secure dogs to a fixed location while allowing them a certain freedom of movement.

We are also of the view that the language of item 790.10 provides for the importation as "similar dog equipment". The importation, by virtue of the fact that it is used to control the movement of a dog, is similar to a leash, and we reaffirm the observation in *Orazio J. Freni, d/b/a Saratoga Forwarding Co.* v. *United States*, 60 Cust. Ct. 319, C.D. 3375, 283 F. Supp. 89 (1968) that, "the enumerated articles in the item thus share the basic characteristics of being put on a dog so as to limit its freedom of movement."

It is sufficient to note, with regard to plaintiff's alternative claim for classification of the importation as chain pursuant to item 652.24, that said provision is an *eo nomine* designation and the provision for dog equipment is a "use" provision. Absent a clear legislative intent to the contrary, the use provision is usually considered more specific. *M. Pressner & Co.* v. *United States*, 42 CCPA 48, C.A.D. 568 (1954). Hence, in accordance with General Interpretative Rule 10(c) of the TSUS which requires that the more specific description control the classification, we find that the provision for similar dog equipment

describes the importation more specifically than the provision for chains.

In light of the above, we hold that the instant merchandise was properly classified pursuant to item 790.10 of the Tariff Schedules of the United States.

Judgment will issue accordingly.