(C.D. 4097)

S. JACKSON & SON, MCCANDLESS, INC. v. UNITED STATES

---

United States Customs Court, Second Division

(Decided October 20, 1970)

*Allerton deC. Tompkins* for the plaintiff.

*William D. Ruckelshaus,* Assistant Attorney General (*Andrew P. Vance* and *Frederick L. Ikenson,* trial attorneys), for the defendant.

Before RAO, FORD, and ROSENSTEIN, Judges

ROSENSTEIN, Judge: The merchandise covered by the protest herein, which is described on the commercial invoice as "Four Rubber Belt Type Intermediate Carriers", "Two Spare Rubber Belts", "Two Major Repair Kits", "One Set of Air Clutch Spares", "One Set of Chain and Sprockets", and "Six Ball Bearing Idlers", was classified under the provision of TSUS item 664.10 for "* * * belt conveyors, and other lifting, handling, loading, or unloading machinery, and conveyors, all the foregoing and parts thereof not provided for in item 664.05", and assessed with duty thereunder at the rate of 10.5 per centum ad valorem. The articles are claimed to be free of duty under the provision of TSUS item 666.20 for "machinery for use in the manufacture of sugar, and parts thereof".

Upon conclusion of cross-examination of plaintiff's sole witness, counsel for plaintiff conceded that the two spare rubber belts, two major repair kits, the set of air clutch spares, and the six ball bearing idlers were properly classified and sought to abandon the protest with respect to these items. Government counsel objected to abandonment and requested the opportunity to "consider it in the briefing stage" (R. 35). The trial judge noted that the court had jurisdiction as to

whether it would permit abandonment and reserved ruling on the request to abandon (R. 37).

The pertinent provisions of the Tariff Schedules of the United States read as follows:

Schedule 6, Part 4, Subpart B:

664.10    Elevators, hoists, winches, cranes, jacks, pulley tackle, belt conveyors, and other lifting, handling, loading, or unloading machinery, and conveyors, all the foregoing and parts thereof not provided for in item 664.05_____    10.5% ad val.

Schedule 6, Part 4, Subpart C:

Industrial machinery for preparing and manufacturing food or drink, and parts parts thereof:

666.20            Machinery for use in the manufacture of sugar, and parts thereof___    Free

The sole witness, president and general manager of St. James Sugar Cooperative, Inc., the ultimate consignee, who ordered the merchandise at bar and observed its installation and operation described the operation of the four carriers, as follows:

There is a chain drive connecting the head roll shaft of the intermediate carrier, and an endless belt is placed over the carrier, compelling the movement of the tail or bottom roll, and all of the intermediate rolls.

The imported belts, kits, spares, sprockets, and idlers are parts of the intermediate carriers: the set of chain and sprockets must be assembled on the intermediate carriers before the latter can be used.

The sugar cane received at the St. James factory in St. James, Louisiana is chopped, crushed and the juices extracted therefrom; the residue of the cane, or bagasse, as it is called at that stage, is then put through five crushing units, or mills, which are connected by the four intermediate carriers herein. As it leaves each crusher and is being conveyed to the next crushing unit on the moving intermediate carrier, the bagasse, which is somewhat compressed and compacted, is wetted and "conditioned", that is, allowed adequate time to expand from its compressed state so "that it may take maximum absorption in the interval of time from which it moves from one crushing mill to the other." This is done in order to maximize the amount of juice to be extracted at each crusher. The juice is made into edible brown sugar.

The witness' business experience is limited to sugar cane production and sugar processing. However, he does not believe that the conveyors are used in other industries. He knows of another manufacturer that makes a similar rubber belt carrier which is used in sugar machinery. He only uses the carriers to convey bagasse but he "could imagine that they would convey anything you place on them."

The collector's classification carries with it a presumption of correctness with a dual burden resting on plaintiff to show error in the collector's action and to prove the correctness of its asserted classification. *De Haan Co.* v. *United States*, 55 CCPA 76, C.A.D. 936 (1968).

It is not disputed that item 666.20 is a "use" provision [1] and subject to General Interpretative Rule 10 (e) (i) which provides that—

> (e) in the absence of special language or context which otherwise requires—
>> (i) a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of articles of that class or kind to which the imported articles belong, and the controlling use is the chief use, i.e., the use which exceeds all other uses (if any) combined;

Chief use of articles of the class or kind as those at bar at, or immediately prior to, the date of importation is the criterion for ascertaining use. *C. J. Tower & Sons of Buffalo, Inc.* v. *United States*, 63 Cust. Ct. 128, C.D. 3886 (1969). Thus, it was incumbent upon plaintiff to establish that the rubber belt type intermediate conveyors at bar are of the class or kind chiefly used in the manufacture of sugar.

In *Hoffschlaeger Company, Ltd., American Customs Brokerage Co., Inc., et al.* v. *United States*, 60 Cust. Ct. 497, C.D. 3440, 284 F. Supp. 787 (1968), this court stated, with respect to General Interpretative Rule 10(e) (i)—

> It is also well settled that evidence limited to use in one state, or in one part of the country, is insufficient to fulfill the territorial requirement of proof of chief use, unless it be shown that the area of established use is the principal or only area of use of the article in issue. Thus for example, proof of chief use in the State of California was held, in *Pacific Guano & Fertilizer Co. et al.* v. *United States*, 15 Ct. Cust. Appls. 218, T.D. 42240, insufficient to establish chief use in the United States. In *The A. W.*

---

[1] The Tariff Classification Study, Schedule 6, November 15, 1960, states, p. 266: "Items 666.20 and 666.25 cover industrial machinery for preparing and manufacturing food and drink. Item 666.20 would continue, without change, the existing provisions in paragraph 1604 under which such machinery for use in the manufacture of sugar and parts thereof would be free of duty. * * *"

Paragraph 1604 relates to chief use. *United States* v. *Union Sugar Div., Consolidated Foods Corp.*, 54 CCPA 1, C.A.D. 892 (1966).

*Fenton Co., Inc.* v. *United States*, 40 Cust. Ct. 327, C.D. 2002, it was found that testimony by a thoroughly qualified witness as to uses in California, Michigan, and Ohio was inadequate to meet the territorial requirement since uses in other parts of the country could differ. In the case of *Bob Stone Cordage Co., et al.* v. *United States*, 51 CCPA 60, C.A.D. 838, although witnesses testified to uses in Nebraska, Oklahoma, Kansas, Arkansas, Missouri, and Iowa, the court decided that, since the principal area of use was the entire Middle West, such evidence could not establish chief use in the nation.

And see *Maui Varieties Ltd., American Customs Brokerage Co., Inc., et al.* v. *United States*, 56 CCPA 36, C.A.D. 950 (1968); *L. Tobert Co., Inc., American Shipping Co.* v. *United States*, 41 CCPA 161, 164, 165, C.A.D. 544 (1953).

The record herein, which is limited to the witness' experience with the imported merchandise in his Louisiana plant, does not meet the requirements for establishing chief use as enunciated in the foregoing cases. Furthermore, it has not been shown, nor does the record suggest, that the character and design of the articles at bar are such that their use throughout the country would be only that use testified to by the witness. *C. J. Tower & Sons of Buffalo, Inc.* v. *United States, supra; Hoffschlaeger Company, Ltd., American Customs Brokerage Co., Inc., et al.* v. *United States, supra.*

It is clear from the record that the subject intermediate carriers are belt conveyors within the meaning of the *eo nomine* provision therefor in item 664.10. In view of plaintiff's failure to establish that they come within the ambit of item 666.20, we do not reach the question whether the classifying provision is more specific, as defendant argues, than the one under which they are claimed.

We are also satisfied that the item invoiced as "set of chain and sprockets" is essential to the functioning, and is a part of, the conveyors herein. Defendant had alternatively claimed in its pretrial memorandum, although it was not pressed subsequently in the brief, that the article was more specifically described by item 680.54 which provides, among others, for "chain sprockets". General Interpretative Rule 10(ij), provides that "a provision for 'parts' of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part." The testimony regarding this item is sparse and bears more on its relationship to the conveyors rather than on a description of the article itself. Consequently, we are loath to disturb the collector's presumptively correct classification absent a clear showing that the merchandise is, in fact, "chain sprockets" within the meaning of item 680.54.

Turning to the remaining items covered by the protest, which plaintiff seeks to abandon, we note that the government objects to this action only insofar as it affects the air clutch spares. Defendant asserts, although in no wise conceding error in the collector's classification under item 664.10, that although they are parts of belt conveyors, General Interpretative Rule 10(ij) compels their classification under the more specific provision for "clutches" in item 680.54. The government argues that the alternative classification it proposes is "tantamount" to a counterclaim and, citing Rule 41(a)[2] of the Federal Rules of Civil Procedure which, concededly, is not controlling herein, urges that we disallow the abandonment and render a judgment on the merits as to the proper classification of this merchandise.

We do not agree that the situation at bar is analagous to that covered by Rule 41(a) or that the judicial relief requested would be appropriate in the circumstance. As Mr. Chief Justice Taft stated, in *Ex Parte: In the Matter of Skinner & Eddy Corporation*, 265 U.S. 86, 92–93 (1924):

> * * * At common law a plaintiff has an absolute right to discontinue or dismiss his suit at any stage of the proceedings prior to verdict or judgment, and this right has been declared to be substantial. *Barrett* v. *Virginian Ry. Co.*, 250 U.S. 473; *Confiscation Cases*, 7 Wall. 454, 457; *Veazie* v. *Wadleigh*, 11 Pet. 55; *United States* v. *Norfolk & Western Ry. Co.*, 118 Fed. 554.
>
> It is ordinarily the undisputed right of a plaintiff to dismiss a bill in equity before final hearing. *McGowan* v. *Columbia, etc., Association*, 245 U.S. 352, 358. In *Pullman's Palace Car Co.* v. *Central Transportation Co.*, 171 U.S. 138, 146, this statement of the rule in *City of Detroit* v. *Detroit City Ry. Co.*, 55 Fed. 569, was approved:
>
> "It is very clear from an examination of the authorities, English and American, that the right of a complainant to dismiss his bill

---

[2] Rule 41(a) provides:

(a) Voluntary Dismissal : Effect Thereof.

(1) *By Plaintiff; by Stipulation.* Subject to the provisions of Rule 23(e), of Rule 66, and of any statute of the United States, an action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs, or (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action. Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of the United States or of any state an action based on or including the same claim.

(2) *By Order of Court.* Except as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. If a counterclaim has been pleaded by a defendant prior to the service upon him of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court. Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.

without prejudice, on payment of costs, was of course except in certain cases. *Chicago & A. R. Co.* v. *Union Rolling-Mill Co.*, 109 U.S. 702. The exception was where a dismissal of the bill would prejudice the defendants in some other way than by the mere prospect of being harassed and vexed by future litigation of the same kind."

Rule 41(a) was intended to deal with the exceptional situation which might arise whereby a defendant would be unduly prejudiced by abandonment of an action. In *Hudson Engineering Company et al.* v. *Bingham Pump Company*, 298 F. Supp. 387, 388 (S.D.N.Y. 1969), the court stated:

> It must be remembered that the purpose of Rule 41(a) "was to eliminate the evils resulting from the unqualified right of a plaintiff to take a voluntary nonsuit at any stage of the proceeding before pronouncement of judgment and after the defendant had incurred substantial expense or acquired substantial rights." Stevenson v. United States, 197 F. Supp. 355, 357 (M.D.Tenn. 1961) ; *accord* McCann v. Bentley Stores, Corp., 34 F. Supp. 234 (W.D.Mo. 1940).

In light of defendant's failure to offer any evidence, testimonial or otherwise, in support of its alternative claim, and its continued espousal of the collector's classification we are unable to find that defendant would be unduly prejudiced by the abandonment or suffer infringement of a substantial right. Therefore, treating plaintiff's notice of abandonment as a motion to abandon, it shall be granted.

Although we perceive no grounds in this case for denying the motion, this is not to say that we would not act otherwise in a more appropriate situation [3] upon a satisfactory showing that defendant would be unduly prejudiced or suffer extreme hardship by an abandonment.

For the foregoing reasons, the protest is overruled as to the rubber belt type intermediate conveyors and the set of chain and sprockets; and is dismissed as to all other items listed on the invoice.

Judgment will be entered accordingly.

---

[3] Rule 23A of the Rules of the United States Customs Court, amended to take effect January 1, 1970, subsequent to the trial herein, states, in pertinent part:

1. A case may be abandoned by plaintiff:
   (a) *After service of a notice of trial,* by order of the Court on a motion to abandon and upon such terms and conditions as the Court deems appropriate.
      (1) A motion to abandon shall be made pursuant to and in accordance with the provisions of Rule 6(d) and Rule 6(e).