**Arthur J. HUMPHREYS and Packard-Bell Electronics**

v.

**UNITED STATES.**

C.D. 3128;  Protest Nos. 65/3452–24713.

United States Customs Court,
Second Division.
Sept. 25, 1967.

Glad & Tuttle, San Francisco, Cal. (Robert Glenn White, San Francisco, Cal., of counsel), for plaintiffs.

Carl Eardley, Acting Asst. Atty. Gen. (Sheila N. Ziff, and Andrew P. Vance, New York City, trial attorneys), for defendant.

Before RAO, Chief Judge, and FORD, Judge.

FORD, Judge.

The merchandise, the subject of this protest, was classified under the provisions of the Tariff Schedules of the United States, item 685.50, as "other" radiotelegraphic or radiotelephonic transmission and reception apparatus, dutiable at 15 per centum ad valorem. Plaintiffs contend that the merchandise, invoiced as "stereo cabinets," is classifiable under TSUS item 727.35 as other wood furniture, dutiable at 10.5 per centum ad valorem, or, alternatively, as parts of a radio-phonograph combination, under TSUS item 685.30, dutiable at 13.75 per centum ad valorem.

The competing tariff provisions are as follows:
Schedule 6, part 5—

> \* \* \* radiobroadcasting and television transmission and reception apparatus, \* \* \* phonographs, \* \* \* all of the foregoing, and any combination thereof, \* \* \* and parts thereof:
>
> > \* \* \* \* \* \* \*

Item 685.30  Radio-phonograph combinations .....13.75% ad val.

> > \* \* \* \* \* \* \*

Item 685.50  Other ..........................15% ad val.
Schedule 7, part 4, subpart A—

> \* \* \* \* \* \* \*
>
> Furniture, and parts thereof, not specially provided for:
>
> > \* \* \* \* \* \* \*
> >
> > Of wood:
> >
> > > \* \* \* \* \* \* \*
> > >
> > > Other:
> > >
> > > > \* \* \* \* \* \* \*

Item 727.35     Furniture other than chairs ....10.5%  ad  val.

In material substance, the facts developed from the testimony show the subject cabinets, which were stipulated to be in chief value of wood, were produced by a Canadian manufacturer in accordance with designs prepared by the importer, Packard-Bell Electronics. In their condition as imported, the cabinets are completed radio-phonograph cabinets, with the exception of, but ready for the installation of, several electrical component parts. The electrical components, which are installed in the cabinet by Packard-Bell after importation, include speakers, a tuner, an amplifier, and a record changer.

While styling is the primary concern in the selection of a cabinet design by Packard-Bell, after a proposed cabinet style has been selected, an electronics engineer incorporates the electronic components into the cabinet design in order to obtain the best sound tone performance of those components. In addition to holding the electrical components, the cabinet is designed to create a resonance. The somewhat sketchy testimony concerning the use of the cabinet in producing resonance is made more complete by the information supplied in Packard-Bell's advertisement for the completed article (plaintiffs' exhibit 5), known as the "RCP–30 Scandia," which contains the statement, in describing the features of the RCP–30 Scandia: "ALL–HARDWOOD ACOUSTICAL CHAMBERS designed to complement electronic and speaker components for optimum performance."

Packard-Bell does no retail selling, but on the retail level the RCP–30 Scandia is sold in furniture stores, appliance stores, television stores, and department stores.

There are several issues, raised by the collector's classification and plaintiffs' alternative claims which are presented here for determination. The Court must decide whether the subject cabinet is subject to classification as furniture, and, if so, whether the cabinet is also classifiable within the superior heading for radiotelegraphic or radiotelephonic apparatus. If the cabinet is classifiable as both, is it more specifically provided for in TSUS under such superior heading rather than as furniture, and, if so, is it classifiable under item 685.30 or item 685.50?

With respect to the furniture claim, plaintiffs rely, for judicial support of their contention, primarily upon the decision in Necchi Sewing Machine Sales Corp. and Barian Shipping Co., Inc. v. United States, 30 Cust.Ct. 1, C.D. 1489. There sewing machine cabinets of wood, designed to accommodate sewing machines, were held to be within the common meaning of the term "furniture." Plaintiffs also cite Delaware Paper Mills, Inc. v. United States, 35 Cust.Ct. 221, Abstract 59234, wherein it was held that certain tops and sides of plywood, which after importation were joined to other pieces to form television cabinets, were not classifiable as furniture, apparently only for the reason that there was an absence of dedication to use.

In the Columbia Graphophone Mfg. Co. case, T. D. 38749, reported at 39 Treas. Dec. 399, a wooden phonograph cabinet, imported without the phonograph, but intended to hold the phonograph and records and a necessary part of the phonograph when offered for sale, was held to be dutiable as parts of phonographs under paragraph 374 Tariff Act of 1913, rather than as a manufacture of wood under paragraph 176 of that act.

Without dismissing altogether the usefulness of these decisions which arose out of earlier tariff acts, we are aware that they are not controlling here, for we are now concerned with new and different tariff schdeules. United States v. J. H. Brown et al., 46 CCPA 1, C.A.D. 686.

The primary effort, in the construction of the tariff schedules, is to carry out the legislative intent. The first and most obvious method for determining the intent of Congress is to examine the statute itself. United States, etc. v. Simon Saw & Steel Company, 51 CCPA 33, C.A.D. 834.

It is apparent to the Court, and defendant does not seem to dispute the fact, that the subject cabinets are within the concept of furniture, as expressed in the

headnotes to subpart A of part 4 of schedule 7, for they are movable articles of utility designed to be placed on the floor and used to equip dwellings. The present controversy is whether, as defendant contends, Congress intended to exclude from the term "furniture" those articles, including the subject cabinets, which defendant refers to generically as "machine cabinets."

Congress, in the headnotes to subpart A of part 4, did specifically exclude certain items from the term "furniture." The most pertinent of these exceptions, for present purposes, are those enumerated as subpart A headnotes 1(xii) and 1(xiii) which provide, respectively, for furniture specially designed for X-ray work and furniture specially designed for sewing machines.

Were the Court to accept defendant's interpretation of legislative intent, the effect would be to add another exclusion, for furniture specially designed for radio-phonograph combinations, from classification as furniture. To do so would be to assume a legislative function. For where Congress intended to exclude furniture specially designed for particular purposes, as for X-ray work and sewing machines, it did so in express, unequivocal language.

The inclusion of these expressed exceptions indicates that furniture specially designed for a particular purpose would be within the concept of furniture had the exceptions not been made. See, The M. H. Pulaski Co. et al. v. United States, 6 Ct.Cust.Appls. 291 T.D. 35508. Furthermore, the inclusion of the expressed exceptions for X-ray work and sewing machines indicates that Congress intended no further exceptions for other specially designed furniture. See, Transport Co. v. United States, 15 Ct.Cust. Appls. 89, T.D. 42159. We cannot consider the absence of further exclusions for specially designed furniture as mere legislative oversight. H. W. Robinson Air Freight Corp. v. United States, 48 CCPA 148, C.A.D. 782. Therefore, it is incumbent upon this court, in attempting to carry out the will of Congress, not to expand the furniture exclusions beyond the clearly expressed congressional intent. United States v. Rambush Decorating Co. et al., 48 CCPA 123, C.A.D. 776.

Accordingly, the Court concludes that the subject cabinets would be subject to classification as furniture, not specially provided for, other than chairs, under TSUS item 727.35, unless they are more specifically provided for as classified.

█ Inasmuch as classification was under item 685.50, for plaintiffs to succeed they must, of course, overcome the presumption of correctness attaching to the classification. Obviously the subject cabinets were classified under this inferior heading for the reason that they were considered to be constituent components of one of the combinations comprehended within the superior heading. The cabinets were classified as "other" radiotelegraphic or radiotelephonic apparatus for the apparent reason that there was no specific tariff description for parts of radio-phonograph combinations.

At this juncture in this decision, the concern is not with the potential conflict between the two tariff descriptions within the subject superior heading, but only with the correctness of initially placing the cabinets within the scope of the superior heading.

█ At the outset, it should be noted that we are not unaware of general headnote 10(e) (ij) which specifies that a "provision" for parts of an article covers a product solely or chiefly used as a part of such article. Inasmuch as the classification is not within a specific parts provision, the cited headnote is not controlling in and of itself. However, the record here establishes that the subject merchandise is within the general intent of TSUS, as expressed in the cited headnote concerning the classification of parts of an article, for the cabinets are chiefly used to house radio-phonograph combinations.

The function of the cabinets in the operation of radio-phonograph combinations would determine the correctness of

their inclusion within the superior heading which encompasses radio-phonograph combinations and parts thereof. In evaluating the function of the cabinets as such parts, it is instructive to consider such function in the light of existing law concerning the facts necessary to show an importation to be a part within a specific parts provision.

The most recent reported pronouncement of the Court of Customs and Patent Appeals concerning the construction of a parts provision appears in Gallagher & Ascher Co. v. United States, 52 CCPA 11, C.A.D. 849. There auxiliary heaters for Volkswagen automobiles were held to be parts of automobiles notwithstanding the fact that the auxiliary heaters were optional equipment, that the automobile came equipped with a conventional heater and could be operated without the additional heater. The decision was predicated upon findings that the auxiliary heaters were dedicated to a sole and specific use, had no other use, and served a useful function.

Here the record clearly establishes that the subject cabinets were specially designed, manufactured, and used together with electrical components to form a complete article of commerce, the RCP-30 Scandia, which concededly is a radio-phonograph combination. If the cabinets could be used for any other purpose, that fact was not brought out in the record. While the cabinet itself, in style, finish, and appearance, also serves as a decorative article in the home, such use is so subordinate to its dominant feature as a cabinet to house the radio-phonograph's components as to be of minimal significance for classification purposes. The cabinet, to use the language in the Gallagher & Ascher decision, supra, "serves a useful function" in housing the electrical components and in contributing to tonal performance by acting as a resonator for the radio-phonograph combination.

Having concluded that the subject cabinets are classifiable within the superior heading encompassing radio-phonograph combinations and parts, the Court next must determine whether they are more specifically provided for in TSUS as furniture.

More particularly, the competing classification is between the superior heading immediately preceding item 685.10 and the superior heading immediately preceding item 727.10. These superior headings, respectively, are as follows:

Radiotelegraphic and radiotelephonic transmission and reception apparatus; radiobroadcasting and television transmission and reception apparatus, and television cameras; record players, phonographs, tape recorders, dictation recording and transcribing machines, record changers, and tone arms; all of the foregoing, and any combination thereof, whether or not incorporating clocks or other timing apparatus, and parts thereof:

and

Furniture, and parts thereof, not specially provided for:

We restrict our considerations to the involved superior headings rather than to the more specific but subordinate tariff descriptions because of general headnote 10(c) (ii), which provides:

10. *General Interpretative Rules.* For the purposes of these schedules —

\*　\*　\*　\*　\*　\*

(c) an imported article which is described in two or more provisions of the schedules is classifiable in the provision which most specifically describes it; but, in applying this rule of interpretation, the following consideration shall govern:

\*　\*　\*　\*　\*　\*

(ii) comparisons are to be made only between provisions of coordinate or equal status, i.e., between the primary or main superior headings of the schedules or between coordinate inferior headings which are subordinate to the same superior heading; \* \* \*

We interpret the cited language to mean that under TSUS the rule of relative specificity does not apply between

provisions of inferior headings under different superior headings, which is the situation presented here. See, Tariff Classification Study, Submitting Report.

Therefore, the narrow issue in applying the rule of relative specificity is whether the superior heading provision for "radio-broadcasting * * * and reception apparatus, * * * phonographs, * * * and any combination thereof, * * * and parts thereof," is more specific than the superior heading provision for "furniture, and parts thereof, not specially provided for."

The provision for furniture, based upon the concept of "furniture," expressed in the subpart A headnote to part 4 of schedule 7, as an article of utility used to equip dwellings or other establishments, indicates that it is a use provision. Semble, United States v. Quon Quon Company, 46 CCPA 70, C.A.D. 699; New York Merchandise Co., Inc. v. United States, 44 Cust.Ct. 144, C.D. 2169. Radios and phonographs apparently are provided for by eo nomine designations. See, Louis Wolf & Co., Bing Wolf Corp. v. United States, 19 CCPA 132, T.D. 45258.

In applying the rule of relative specificity, there is little assistance in general headnote 10(c) which expresses the truism that where an article is described in two provisions of the schedules, it is classifiable in the provision which most specifically describes it.

Resorting to prior judicial determinations for assistance, a recent decision of the Court of Customs and Patent Appeals holds that the more specific provision is the one having requirements which are more difficult to satisfy. United States, etc. v. Simon Saw & Steel Co., supra. Also, the appellate court in United States v. Astra Trading Corp., 44 CCPA 8, C. A.D. 627, reaffirmed the well-established principle that an eo nomine designation is preferred to terms of general descriptions and to enumerations which are broader in scope. And, in United States v. Lansen-Naeve Corp., 44 CCPA 31, C.A. D. 632, it was held that a "not specially provided for" clause in a use provision

excludes articles enumerated elsewhere by description or eo nomine designation.

■ Applying these principles, we conclude that even though the cabinets are furniture, they are more specifically provided for within the superior heading encompassing radio-phonograph combinations. To be classifiable as not specially provided for furniture of wood, an article of wood need only be a movable article of utility used to equip dwellings or other establishments. To meet the requirements for a part of a radio-phonograph combination, the wooden cabinets, as stated above, also had to be dedicated to a sole and specific use and to serve a useful function in connection with the radio-phonograph combination. In other words, the superior heading encompassing radio-phonograph combinations covers only such articles of furniture as are used for parts of such radio-phonograph combinations.

The remaining issue is whether the cabinets, as parts of a radio-phonograph combination, are provided for under item 685.50, as classified, or under item 685.-30, as alternatively claimed by plaintiffs.

In support of the collector's classification, defendant argues that when parts were intended to be encompassed in the tariff descriptions, subordinate to the subject superior heading, such intent was manifested by specific parts provisions. Therefore, the absence of a parts provision for radio-phonograph combinations in item 685.30 means that such parts are excluded from that tariff description and relegated to the tariff description for "Other" in item 685.50.

Plaintiffs contend that item 685.50 was intended to cover articles falling within the scope of the superior heading, but not otherwise provided for. Inasmuch as radio-phonograph combinations are specifically provided for in item 685.-30, parts of them are also classifiable there by reason of the term "parts thereof" contained in the superior heading.

As this court had occasion to state recently —

The law is clear that where there is no provision for "parts" of articles,

whether the tariff provision be *eo nomine* or use in character, imported merchandise held to be "parts" will not be susceptible of classification thereunder. * * * [William Adams, Inc. v. United States, 56 Cust.Ct. 429, C.D. 2670.]

On the other hand, offering some support for plaintiffs' position is the decision in United States v. Draeger Shipping Co., 18 CCPA 308, T.D. 44561, which involved the classification for parts of printing presses under paragraph 372 of the Tariff Act of 1922. The appellate court held that the provision for "printing presses," not being followed with any provision for parts thereof, and the catchall provision for "all other machines and parts thereof" at the end of the paragraph not being intended to include parts of anything theretofore mentioned in the paragraph, parts of printing presses when imported separately were not included within the paragraph. See, also, Murphy & Co. v. United States, 13 Ct.Cust.Appls. 256, T.D. 41201.

Therefore, there is judicial precedent which tends to restrain us from judicially interposing a parts provision where Congress did not so provide, and other case law holding that a catchall provision for parts of other articles within a given paragraph cannot be expanded to include parts of an article specifically provided for in such paragraph, but without a parts provision.

However, in the 1922 act, which was involved in the *Draeger Shipping Co.* case, supra, the statutory language was, "all other machines or parts thereof, finished or unfinished, not specially provided for." In TSUS, the provision is limited to the single word "other." The language in the 1922 act was construed to apply only to machinery, and parts thereof, which had not been specially provided for. However, the "other" provision in TSUS is not limited, as was the counterpart provision in the 1922 act, to only machines not specially provided for. Indeed, it is in no way specifically limited or modified. Moreover, it is a subdivision of an overriding superior classification which specifically provides for parts, not a provision followed by language which relates "parts" to a limited category of designated merchandise.

 We conclude that the tariff description "Other" in item 685.50 was intended to cover any importations, whether complete articles or parts, encompassed by the superior heading, but not specifically enumerated in the several subordinate tariff descriptions.

Therefore, for the reasons set forth above, we hold the subject cabinets were properly classified. Accordingly, plaintiffs having failed to prove that the classification was made erroneously and that the claimed classifications were correct, the protest is overruled.

Judgment will be entered accordingly.