(C.D. 3940)

ARTHUR J. FRITZ & CO.
WESTERN OILFIELDS SUPPLY CO. } *v.* UNITED STATES

United States Customs Court, First Division

(Decided December 15, 1969)

*Glad & Tuttle* (*Robert Glenn White* of counsel) for the plaintiffs.
*William D. Ruckelshaus*, Assistant Attorney General (*Steven R. Sosnov* and *Herbert P. Larsen*, trial attorneys), for the defendant.

Before WATSON, MALETZ, and RE, Judges

RE, Judge: Upon importation from Great Britain, three shipments of sealing rings, allegedly used in connection with irrigation systems, were classified for customs duty purposes as gaskets, of rubber or plastics, under item 773.25 of the Tariff Schedules of the United States and duty was imposed thereon at the rate of 10 per centum ad valorem.

The plaintiffs have protested the classification and customs duty assessment and make various claims. It is plaintiffs' primary claim that the articles are entitled to entry free of duty as parts of agricultural and horticultural implements, not specially provided for, within the

purview of item 666.00 of the Tariff Schedules of the United States. Plaintiffs claim alternatively that the merchandise is entitled to entry free of duty under item 662.45 of the tariff schedules as parts of sprayers suitable for agricultural or horticultural use. It is also claimed that the assessment of duty was illegal and void on the grounds, as stated in plaintiffs' brief, that the sealing rings in issue "have been purportedly removed from the free list as parts of agricultural implements by means of trade negotiations and modifications made effective only by Presidential Proclamation."

Item 773.25 of the Tariff Schedules of the United States reads as follows:

"Gaskets, of rubber or plastics_____ 10% ad val."

The following are the claimed free entry provisions of the tariff schedules:

666.00  Machinery for soil preparation and cultivation, agricultural drills and planters, fertilizer spreaders, harvesting and threshing machinery, hay or grass mowers (except lawn mowers), farm wagons and carts, and agricultural and horticultural implements not specially provided for, and parts of any of the foregoing_____   Free
Mechanical appliances, whether or not hand operated, for projecting, dispersing, or spraying liquids or powders; fire extinguishers, whether or not charged; spray guns and similar appliances; steam- or sand-blasting machines and similar jet projecting machines; all the foregoing (except automatic vending machines) and parts thereof:

  *   *   *   *   *   *   *

662.45  Sprayers, self-contained, having a capacity over 5 gallons, suitable for agricultural or horticultural use_____   Free

In addition to six exhibits received in evidence, the only witness called to testify was Mr. Walter G. Lake, who stated that he has been employed since 1948 by the Western Oilfields Supply Co., ultimate consignee of the instant merchandise, which company is engaged primarily in the irrigation and equipment business. In addition to serving as secretary and treasurer of his company, Mr. Lake is also an engineer and designs all the equipment and supervises all sales.

Mr. Lake testified that the sealing rings in issue are identical in all respects except dimensions, which are 2, 3, 4, 6 and 8 inches in diameter. Five sealing rings, the same as the merchandise at bar,

but not known to be part of the instant importations, were received in evidence as collective exhibit 1.

The witness stated that a sealing ring, such as is illustrated by exhibit 1, is installed by hand in an irrigation coupling and that it has no other use than in irrigation equipment. An article consisting of a piece of metal pipe joined to a coupling, fitted with a two-inch green rubber sealing ring, and surmounted by a "rain bird" sprinkler, was received in evidence as exhibit 2 to illustrate the method of installation of an article similar to exhibit 1.

Mr. Lake explained that under pressure of water flowing internally through the pipe and coupling, the sealing ring seals the water within the pipe and coupling. When the water pressure is turned off the sealing ring allows water remaining in the pipe to drain, thereby lightening the weight of the pipe and enabling the pipe to be moved to another area to be irrigated.

The principal place of business of the Western Oilfields Supply Co. was stated to be in California, with branch offices in Arizona and New Mexico, and with dealers in Texas, Nebraska and Delaware. The company's irrigation systems are used in the states mentioned.

Upon being asked whether there are certain areas of the United States where the use of agricultural sprinklers predominate, Mr. Lake replied: "The predominant areas are the western areas, I would say in the order of Texas, California, Idaho, and Washington."

Exhibit 3, a flange gasket; exhibit 4, a carburetor gasket; exhibit 5, a manifold gasket, and exhibit 6, a valve cover gasket, were introduced into evidence by plaintiffs and were received by the court. The witness explained that exhibit 3 is used in connection with water systems, and that exhibits 4, 5 and 6 are normally used on automobiles. Their purpose of sealing joints is accomplished by compression exerted externally by means of bolts. The witness distinguished exhibits 3 through 6 from exhibit 1 by stating that whereas sealing rings such as exhibit 1 are reusable, reuse is not a common characteristic of exhibits 3 through 6. Furthermore, whereas exhibit 1 permits drainage when the water pressure has been turned off, exhibits 3 through 6 do not allow for any drainage.

On being queried on cross-examination about the drainage permitted by the sealing rings in issue, Mr. Lake stated that the imported articles may be called loose fitting gaskets or packing, and that they do not fit tightly on the pipe and coupling until they are compressed by the internal pressure of flowing water. During the drainage phase, the witness stated the sealing rings are still gaskets.

It is noted that the articles in issue were referred to during the course of the testimony as "sealing rings" and as "gaskets". That such

reference was made in a synonymous sense is evident from the common meaning of those terms as found in the following lexicographic authorities:

Webster's New International Dictionary of the English Language, Second Edition (1958)—

> "*gasket, n.* \* \* \* 2. *Mach.* Plaited hemp or tallowed rope for packing pistons, making pipe joints, etc.; hence, packing for the same purpose made of rubber, asbestos, metal, or other suitable material, usually in the form of sheets or rings."

Funk & Wagnalls New "Standard" Dictionary of the English Language (1956)—

> "*gasket, n.* 1. *Mech.* (1) A thin, flat, annular packing-piece of india-rubber, leather, or sheet metal, placed between two flat surfaces, as a manhole-plate and a boiler-head, to make their joint water-tight. (2) A packing of hemp or other fibrous stuff, or of lead, between the bell of one pipe and the spigot or male end of another. \* \* \*"

The twofold burden of proof which falls to a plaintiff in a customs case has been succinctly stated by the Court of Customs and Patent Appeals in *United States (Index Industrial Corp., Party in Interest)* v. *National Starch Products, Inc.*, 50 CCPA 1, 4, C.A.D. 809 (1962), as follows:

> "\* \* \* the burden of proof is on à protestant to show not only that the collector's classification is wrong but also to establish the classification of the merchandise in issue which is asserted by the protestant to be the proper classification. As recently stated in *Atlantic Aluminum & Metal Distributors, Inc.* v. *U.S.*, 47 CCPA 88, C.A.D. 735: 'It is axiomatic that a presumption of correctness attaches to the collector's classification. *Lowenthal Trimming Corp.* v. *United States*, 39 CCPA 149, C.A.D. 477; *McKesson & Robbins, Inc.* v. *United States*, 27 CCPA 157, C.A.D. 77. To overcome this presumption, the protestant has the burden of proving not only that the collector erred, but also that the classification urged by the protestant is correct. *W.T. Grant Company* v. *United States*, 38 CCPA 57, C.A.D. 440; *United States* v. *Good Neighbor Imports, Inc.*, 33 CCPA 91, C.A.D. 321; *United States* v. *Fred Gretsch Mfg. Co., Inc.*, 28 CCPA 26, C.A.D. 120.' "

In view of the foregoing legal principles applicable in protest cases, the question presented may be stated as follows: Have the plaintiffs, on the record presently before the court, met the requisite burden of proof in overcoming the rebuttable presumption that the merchandise was properly classified, and have they established that the claimed classification is correct?

Since it may be readily disposed of, the court will first consider plaintiffs' alternative claim for classification of the imported gaskets

as parts of sprayers provided for in item 662.45 of the tariff schedules. It cannot be gainsaid that the imported articles are not in themselves sprayers suitable for agricultural or horticultural use and that at best it must be the plaintiffs' contention that the gaskets or sealing rings are "parts" of such sprayers.

However, although the statutory provision invoked by plaintiffs, i.e., item 662.45, does provide for the free entry of certain sprayers suitable for agricultural or horticultural use, that item does not provide for the free entry of "parts" thereof. This can be demonstrated by reading the provision upon which plaintiffs rely in its proper context. Several items must therefore be set forth as follows:

|  |  |  |
|---|---|---|
| | "Mechanical appliances, whether or not hand operated, for projecting, dispersing, or spraying liquids or powders; fire extinguishers, whether or not charged; spray guns and similar appliances; steam- or sand-blasting machines and similar jet projecting machines; all the foregoing (except automatic vending machines) and parts thereof: | |
| 662.35 | Simple piston pump sprays, powder bellows, all the foregoing and parts thereof | 19% ad val. |
| 662.40 | Sand-blasting machines, and parts thereof | Free |
| 662.45 | Sprayers, self-contained, having a capacity over 5 gallons, suitable for agricultural or horticultural use | Free |
| 662.50 | Other | 10% ad val." |

From the foregoing, it will be seen that although "parts" of pump sprays and powder bellows are provided for in item 662.35, and "parts" of sand-blasting machines in item 662.40, there is no *eo nomine* provision for "parts" of self-contained sprayers in item 662.45. Hence, unless otherwise more specifically provided for, such parts would be subject to classification within the "Other" provision of item 662.50, and dutiable at the rate of 10 per centum ad valorem, the same rate of duty as that imposed on the sealing rings in issue at the time of their importation.

An analogous situation arose in the case of *Arthur J. Humphreys, Packard-Bell Electronics* v. *United States*, 59 Cust. Ct. 231, C.D. 3128, 272 F. Supp. 951 (1967), affirmed on appeal *id.* v. *id.*, 56 CCPA 67, C.A.D. 956 (1969). The end result in the *Humphreys* case was that certain wooden cabinets were, in the absence of a "parts" of radio phonograph combinations provision, held properly classified within the "Other" provision of item 685.50 of the tariff schedules. They were therefore subject to a higher rate of duty than was provided for the

radio phonograph combinations for which they were specifically designed and with which they were exclusively used.

Counsel for plaintiffs, in their brief, urge that the *Humphreys* case "should not control here as the entire absence in this instance of legislative history or other probative source to indicate an intent to accord dutiable status to unenumerated parts of articles given free entry suggests a different result on the premises of this case." In view of the manifest intent of Congress in the clear and unambiguous language of items 662.35–662.50 previously set forth, the court does not agree. As stated by the Court of Customs and Patent Appeals in *Air Express International Agency, Inc.* v. *United States*, 53 CCPA 11, 14, C.A.D. 869 (1966) :

> "Where legislative intent is manifest from the plain meaning of the language employed, there is neither occasion nor justification for resort to the well recognized rules of statutory construction as aids in the ascertainment of legislative intent.* * *"

See also opinion of Judge Nichols in *F.L. Smidth & Company* v. *United States*, 56 CCPA 77, C.A.D. 958 (1969).

In view of the foregoing considerations, plaintiffs' claim for classification of the sealing rings in controversy within the purview of item 662.45 is overruled.

The court will next consider the contention of plaintiffs that the articles in controversy are parts of agricultural implements, not specially provided for, in item 666.00 and accordingly entitled to entry free of duty.

The record before the court supports a holding that the imported articles are gaskets and it is uncontroverted that they are composed of rubber. There is unrefuted testimonial evidence to the effect that the imported gaskets are used only with irrigation systems such as are sold or produced by the Western Oilfield Company. And any shortcoming the record possesses as to the nature and specific use of the instant irrigation systems is overcome by a holding of this court in the analogous case of *Western Oilfields Supply Co.* v. *United States*, 62 Cust. Ct. 182, C.D. 3722, 296 F. Supp. 330 (1969) (appeal pending), to the effect that judicial notice may be taken of the fact that irrigation is essentially an agricultural activity.

In the *Western Oilfields* case, herein cited, merchandise described on the invoices as "Valve Key Operating Nuts" had been classified as pipe tools (except cutters), wrenches and spanners, and parts thereof, of the type known as hand tools, in item 648.97 of the Tariff Schedules of the United States, and assessed with duty at the rate of 22.5 per centum ad valorem. As in the instant case, it was plaintiff's contention, *inter alia*, that the articles should properly have been classified as parts of agricultural implements pursuant to item 666.00 of the tariff schedules,

and granted entry free of duty. The articles there in issue consisted of hollow metal cylindrical sleeves, approximately 1½ inches in length and 1¼ inches in diameter, and formed a part of valve elbows attached to pipes in irrigation systems, the purpose of the valve elbows being to divert water from the main pipe into smaller pipes in the irrigation systems. The court there found that, inasmuch as valve elbows were not hand tools, the imported sleeves which formed parts of the elbows were not "parts" of articles which were hand tools. The court further found that the articles therein were parts of elbow valves used in agricultural irrigation systems, and that they were properly subject to classification as parts of agricultural implements within the scope of item 666.00 of the tariff schedules. Hence, they were entitled to entry free of duty, as claimed by plaintiffs.

In view of the holding of this court in the prior *Western Oilfields* case, *supra*, it may be granted, for purposes of discussion, that irrigation systems are agricultural implements within the scope of item 666.00 of the Tariff Schedules of the United States, and that the record herein sustains a holding that the instant sealing rings or gaskets are parts of such irrigation systems. The question is nevertheless presented whether the sealing rings in issue are entitled to free entry as "parts" by virtue of the "parts" provision of item 666.00, as claimed by plaintiffs, or are excluded therefrom by virtue of the Tariff Schedules General Interpretative Rule 10(ij), as contended by defendant. On this phase of the case, plaintiffs' position, as set forth in its brief and referred to herein, is that the sealing rings in issue "have been purportedly removed from the free list as parts of agricultural implements by means of trade negotiations and modifications made effective only by Presidential Proclamation."

The fact that such gaskets were accorded free entry prior to the enactment of the Tariff Schedules of the United States on August 31, 1963, as has been testified to by plaintiffs' witness Lake, carries little or no weight as to the classification of the instant merchandise in view of the pervasive effect of General Interpretative Rule 10(ij) of the tariff schedules. The rule provides that "a provision for 'parts' of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part."

Item 773.25 of the tariff schedules, which provides for gaskets, of rubber or plastics, under which the instant merchandise was classified, did not appear in the proposed provisions contained in the Tariff Classification Study, the 10-volume report submitted on November 15, 1960 to the President of the United States and to the Chairmen of the Committee on Ways and Means of the House and the Committee on Finance of the Senate pursuant to Title I of the Customs Simplification Act of 1954 (P.L. 768, 83d Cong., 2d sess., 68 Stat. 1136). The Tariff Classification Study, together with the First Supplemental

Report thereto, was enacted by Congress as the Tariff Classification Act of 1962 (P.L. 87–456, 76 Stat. 72), approved May 24, 1962, to become "effective with respect to articles entered, or withdrawn from warehouse, for consumption, on or after the 10th day following the date of the proclamation of the President". (P.L. 87–456, sec. 501).

Provision was made in section 101(b)(4)(A) of the Tariff Classification Act of 1962 for such subsequent changes as the United States Tariff Commission decided were "necessary to reflect changes in tariff treatment made by statute or under authority of law" which might arise prior to the date the Tariff Schedules of the United States would be proclaimed as being effective.

Such a subsequent change became necessary as a result of the 1960–1961 tariff conference. Presidential Proclamation 3468 of April 30, 1962 was issued (97 Treas. Dec. 157, T.D. 55615) providing, *inter alia*, for a 10 per centum ad valorem rate of duty to be applicable on and after July 1, 1963 to gaskets manufactured from india rubber or gutta-percha (paragraph 1537(b), Tariff Act of 1930, as amended by T.D. 55615, *supra*).

In order to carry over to the Tariff Schedules of the United States the specificity provided for gaskets in Presidential Proclamation 3468, the Tariff Commission, pursuant to the authority vested in it by the Tariff Classification Act of 1962, P.L. 87–456, *supra*, and following the procedures therein prescribed (see Third Supplemental Report, page (iii)), included in the Third Supplemental Report of May 7, 1963 an *eo nomine* provision for "Gaskets, of rubber or plastics" in item 773.25 at a rate of 10 per centum ad valorem.

On August 21, 1963, Presidential Proclamation 3548 (77 Stat. 1017) was promulgated by means of which the Tariff Schedules of the United States, consisting of the General Headnotes and Rules of Interpretation, schedules 1 to 8 inclusive, and the appendix to the tariff schedules, as set forth in the Tariff Commission's Tariff Classification Study Proposed Revised Tariff Schedules, as changed by the First through Seventh Supplemental Reports, were declared to be in effect as to imported articles entered, or withdrawn from warehouse, for consumption on or after August 31, 1963.

In this manner item 773.25 covering gaskets, of rubber or plastics, with which the court is here concerned, was given the same force and effect as any other classification item contained in the Tariff Schedules of the United States. And, as pointed out by defendant in its brief: "If, by some chance, the Commission had violated the intent of Congress in creating this provision, Congress could have easily corrected the error when it considered and enacted the Tariff Schedules Technical Amendments Act of 1965, Public Law 89–241, T.D. 56511," the purpose of which act was, *inter alia*, to correct certain errors in the Tariff Schedules of the United States.

In the light of the foregoing, the court is of the opinion that plaintiffs' claim of illegality of duty assessment under item 773.25 is without merit.

The court is not dissuaded from upholding the classification of the controverted items as gaskets, of rubber or plastics, in item 773.25 of the tariff schedules, by the contention of plaintiffs that the "sealing rings in issue are more than gaskets, and hence are not classifiable as such." It is plaintiffs' position that the articles at bar apply pressure and form a seal only when water is passing through the pipes, that they permit drainage when the water is turned off, and that they are reusable from one installation to another, whereas reuse is not a characteristic of gaskets such as are represented by exhibits 3 through 6. The court is not convinced that reuse is a necessary characteristic in determining whether or not an article is a gasket. The testimonial record discloses that, while a sealing ring, such as exhibit 1, does not form a tight fit between a pipe and coupling with which it is used until the ring is expanded by internal pressure created by a flow of water, when it is in use it is used as a gasket and it seals. Plaintiffs' witness also testified to the effect that during the drainage phase the article is still a gasket, adding that you could call it a loose-fitting gasket specially designed for its intended function or you could call it packing.

Moreover, it is a well established principle of customs law that a tariff provision for an article without limitation covers the article in all its forms. *C.F. Liebert* v. *United States*, 60 Cust. Ct. 677, C.D. 3499, 287 F. Supp. 1008 (1968); *United States* v. *Williams Clarke Co., a/c American Agar and Chemical Co.*, 50 CCPA 67 C.A.D. 822 (1963).

For the foregoing reasons and after due consideration of all cases cited by the parties in their briefs, the court is of the opinion, and so holds, that all claims in the instant protest must be overruled.

Judgment will be entered accordingly.