(C.D. 4092)

JOHN V. CARR & SON, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided October 16, 1970)

*Schwartz & Lidstrom* (*Joseph Schwartz* and *Earl R. Lidstrom* of counsel) for the plaintiff.

*William D. Ruckelshaus*, Assistant Attorney General (*Glenn E. Harris* and *Robert Blanc*, trial attorneys), for the defendant.

Before RICHARDSON, LANDIS, and ROSENSTEIN, Judges

LANDIS, Judge: This protest involves classification, for tariff purposes, of ceramic articles imported from West Germany and entered at Detroit, Michigan. The articles are molded, shaped ceramic pieces sold under the trade name "Abresist". Enough pieces, with spares, were invoiced to cover an area 4,416 square feet.

Customs at Detroit classified the articles as ceramic ware or articles of such ware, not specially provided for, dutiable at 20 per centum ad valorem under TSUS (Tariff Schedules of the United States) item 536.15. Plaintiff's original protest claim, that the articles should be assessed under TSUS item 523.91, as mineral substances or articles of mineral substances, not specially provided for, has been stipulated out of the case by agreement that the involved articles are a "ceramic article" as defined by law.[1] By appropriate amendment of the protest, plaintiff now alternatively claims that the ceramic articles should be classified and assessed either at 12.5 per centum ad valorem, under the TSUS item 532.41 provision for friezes, mantels, and other construction articles of ceramic tiles, or, at 15 per centum ad valorem, under TSUS item 532.61, as other construction articles. "Plaintiff relies primarily upon the claim under Item 532.61."

On trial, in open court, defendant stated that if customs wrongly classified the ceramic articles under TSUS item 536.15, it was prepared to contend that the articles were properly dutiable at 27 per centum ad valorem under the TSUS item 532.31 provision for other ceramic tiles, including roofing tiles.

There is no need to dwell on the customs classifying item TSUS 536.15. It classifies only ceramic wares, and articles of such wares, *not specially provided for*. That classification is necessarily incorrect if these ceramic articles are specially provided for in any one of the TSUS items 532.31, 532.41, and 532.61, alternatively projected by the parties. The latter TSUS items appear in TSUS schedule 5, part 2, subpart B, the full context of which is as follows:

Subpart B.—Ceramic Construction Articles

Subpart B headnotes:

> 1. This subpart does not include—
>> (i) refractory and heat-insulating articles (see subpart A of this part); or
>> (ii) laboratory and industrial chemical ware, electrical ware, and sanitary ware and parts thereof (see subpart D of this part).
>
> 2. For the purposes of this subpart—
> (a) no article 1.25 inches or more in thickness shall be regarded as a tile; and

---

[1] TSUS, schedule 5, part 2, headnote 2(a).

(b) the term "construction articles" means ceramic ware and articles of such ware such as, but not limited to, bricks, tiles, friezes, mantels, sewer and drain pipes and fittings therefor, flue linings, and hollow building blocks, chiefly used in the construction of buildings and other structures.

---

| | | |
|---|---|---|
| | Ceramic bricks: | |
| 532.11 | Not coated in whole or in part with engobe, glaze, or enamel_____ | * * * |
| 532.14 | Coated in whole or in part with engobe, glaze, or enamel_____ | * * * |
| | Ceramic tiles: | |
| | Floor and wall tiles: | |
| 532.21 | Mosaic tiles_____ | * * * |
| | Other: | |
| 532.24 | Glazed _____ | * * * |
| 532.27 | Other _____ | * * * |
| 532.31 | Other tiles, including roofing tiles___ | 27% ad val. |
| 532.41 | Friezes, mantels and other construction articles, all the foregoing, of ceramic tiles _____ | 12.5% ad val. |
| 532.61 | Other construction articles_____ | 15% ad val. |

The merchandise was classified under schedule 5, part 2, subpart E, TSUS item 536.15, which is as follows:

Subpart E. – Ceramic Articles Not Specially Provided For

| | | |
|---|---|---|
| | Ceramic wares, and articles of such wares, not specially provided for: | |
| | * * * * * * * | |
| 536. 15 | Other _____ | 20% ad val. |

Exhibit 1, a representative sample of "Abresist", is an extra piece taken from the import shipment. The "Abresist" pieces were ordered for a job at Detroit Edison's River Rouge plant. Exhibit 2 is a drawing of the job prepared by the manufacturer in Germany. Exhibit 3 is a photostatic copy of Detroit Edison's drawing for the same job. Exhibit A is a commercial pamphlet touting the strength of "Abresist" as an abrasion resisting material ideal for lining bunkers and hoppers, bins and chutes, flumes and sluiceways, coke wharves and loading bays, conveyor troughs and table feeders, cyclones, separators and ducts, pipes and plug valves, and also for other equipment.

At the trial, Mr. Roger L. Hosbein, vice-president of M. H. Detrick Company, Chicago, was qualified to testify as to the use of "Abresist" and its installation at the Detroit Edison plant.

Mr. Hosbein testified that the imported "Abresist" was ordered by Detroit Edison to line or wall the inside of a "cyclone" which he described as:

> * * * a metallic structure that is on a building usually, and the air either from an industrial application or from a furnace that has heavy particles in it, is entered at the top of the cyclone. This gives it centrifugal force, and as it goes down the cone shape, which is the part we furnish the lining for, the velocity of the gasses and particles are increased, so that by centrifugal force the heavy particles go to the outside, and fall to the bottom of the cone, and the clean air turns and goes through the top of the cyclone, and goes out into the atmosphere, so it is a piece of equipment, or structure, that is put on. I see them on buildings here in Chicago when you come in on the train; you see them in little steel mills, to remove particles from the atmosphere.

Exhibit 2 gives the dimensions of the imported "Abresist" pieces in millimeters. The dimensions are average or nominal dimensions. These pieces are not of uniform size but "are specially made pieces that fit inside * * * [the] liner, so that if it wouldn't go in this one [Detroit Edison cyclone], it couldn't go anywhere. It would be unusable material * * *." Mr. Hosbein interpreted exhibit 2 and testified that the cyclone represented on the drawing actually has an inside diameter of 5 feet 6⅜ inches at the base; 2 feet 5½ inches at the top, and stands 7 feet 7¼ inches from top to bottom. The drawing shows the placement of the "Abresist" pieces by numbers. Mr. Hosbein stated that the imported pieces were packed and numbered to correspond to the numbers on the drawing. Portland cement and sand are used to mortar the "Abresist" pieces to the cyclone which stands on legs attached to a building.

Exhibit 1, the piece of "Abresist", has a smooth wall side and a riffled back side for the mortar. It measures 1½ to 1¾ inches thick at various points. While the thickness exceeds 1¼ inches at various points, the nominal thickness of the imported "Abresist" is 30 millimeters, or less than 1¼ inches.

We are here brought to decide whether the imported "Abresist" pieces are ceramic tiles, under TSUS item 532.31, or construction articles of ceramic tiles under TSUS item 532.41, or construction articles under TSUS item 532.61. TSUS items 532.41 and 532.61 are limited to those construction articles chiefly used in the construction of buildings and other structures.

The evidence of record, with respect to the thickness of the "Abresist" pieces is conceded by defendant to be confusing and inconclusive. Pursuant to the subpart B headnote 2(a), *supra*, no article 1.25 inches or more in thickness shall be regarded as a tile within the purview of TSUS item 532.31, the tariff provision projected by defendant. Since the evidence is concedely clearly insufficient on this point, defendant's contention for alternative classification under TSUS item 532.31 is not proved. For the same reason the "Abresist" pieces are not construction articles of ceramic tiles under TSUS item 532.41.

We find that the imported "Abresist" pieces belong to the class or kind of articles such as bricks, and flue linings chiefly used in the construction of buildings and other structures, and sustain the protest claim under TSUS item 532.61.

Defendant substantively argues that "assuming that a cyclone is a building or other structure, and that the imported merchandise ["Abresist"] was used exclusively as a lining for the cyclone, plaintiff has, nevertheless, failed to establish the chief use of the merchandise." The substance of the supporting judicial rule, cited by defendant, is that it is not the use of the particular shipment in question but rather the use of the particular class or type of goods that is controlling. *Atkinson, Haserick & Co., Inc.* v. *United States*, 52 Cust. Ct. 215, 219, C.D. 2463 (1964). The rule, of course, has been codified in TSUS as Rule 10 of the General Headnotes and Rules of Interpretation as follows:

10. General Interpretative Rules. For the purposes of these schedules—

\*     \*     \*     \*     \*     \*     \*

(e) in the absence of special language or context which otherwise requires—

(i) a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of articles of that class or kind to which the imported articles belong, and the controlling use is the chief use, i.e., the use which exceeds all other uses (if any) combined;

(ii) a tariff classification controlled by the actual use to which an imported article is put in the United States is satisfied only if such use is intended at the time of importation, the article is so used, and proof thereof is furnished within 3 years after the date the article is entered;

\*     \*     \*     \*     \*     \*     \*

What defendant has failed to recognize, however, is the well established exception to the rule it enunciates, where the peculiar character and special design of the articles at bar demonstrate *per se* that their use could only be that use testified to by Mr. Hosbein. *Hoffschlaeger*

*Company, Ltd.* and *American Customs Brokerage Co., Inc., et al.* v. *United States,* 60 Cust. Ct. 497, 501, C.D. 3440, 284 F. Supp. 787 (1968).

The evidence establishes that the imported "Abresist" pieces were designed and used to line the wall of a cyclone. They are installed with mortar much in the fashion that brick is laid and a wall is tiled.

Defendant well recognizes the broad signification of the tariff term "structures" and, citing *Humble Oil & Refining Co., Leslie B. Canion et al.* v. *United States,* 46 CCPA 138, C.A.D. 717 (1959), concedes that the word "structures" is not limited to "buildings". Tacitly defendant admits that the cyclone, in which these imported "Abresist" pieces were used, is a structure. Since the only and exclusive purpose the "Abresist" pieces could be used for was in the cyclone, that was the chief use and, to paraphrase General Interpretative Rule 10 on chief use, *supra,* exceeded all other uses (there were none) combined.

The protest claim under TSUS item 532.61 is sustained. Judgment will be entered accordingly.