(C.D. 4020)

BORDER BROKERAGE CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided May 12, 1970)

*Glad & Tuttle* (*Edward N. Glad, George R. Tuttle, Jr.*, and *Hudson F. Edwards* of counsel) for the plaintiff.

*William D. Ruckelshaus,* Assistant Attorney General (*Peter Jay Baskin,* trial attorney), for the defendant.

Before RAO, FORD and NEWMAN, Judges

NEWMAN, Judge: The merchandise which is the subject of this protest consists of certain cold shuts and lap links of varying sizes imported from Canada. This merchandise was assessed with duty at the rate of 19 per centum ad valorem as "other" articles of iron or steel, not coated or plated with precious metal, under item 657.20 of the Tariff Schedules of the United States.

Plaintiff claims that the merchandise is properly dutiable at the rate of 0.4375 cent per pound as parts of chain or chains, ¾ inch or more in diameter, under item 652.33, TSUS.

We hold that plaintiff has sustained its claim.

## The Statutes Involved

Classified under:

Schedule 6, Part 3, Subpart G of the Tariff Schedules of the United States:

Articles of iron or steel, not coated or
plated with precious metal:

\*     \*     \*     \*     \*     \*     \*

Other articles:

\*     \*     \*     \*     \*     \*     \*

657.20           Other _____ 19% ad val.

Claimed under:

Schedule 6, Part 3, Subpart F of the Tariff Schedules of the United States:

Chain and chains, and parts thereof, all
the foregoing of base metal not coated
or plated with precious metal:
Of iron or steel:

\*     \*     \*     \*     \*     \*     \*

Other, including parts:

\*     \*     \*     \*     \*     \*     \*

652.33           ¾ inch or more in diameter_ 0.4375¢ per lb.

## The Issue

The sole issue is whether or not plaintiff has sustained its burden of proving that the cold shuts and lap links are parts of the chain or chains specified in TSUS item 652.33.

## The Record

The record consists of: the testimony of one witness for the plaintiff, Howard T. Johnstone, the superintendent of manufacture at Pacific Chain & Manufacturing Company, ultimate consignee of the imported merchandise; the official papers; and the following exhibits, all introduced by plaintiff:

Exhibit 1 – a ⅞″ x 6″ cold shut which is representative of the other imported cold shuts as to shape, but not as to size and diameter.[1]

Exhibit 2 – a ¾″ lap link which is representative of the other lap links as to shape, but not as to size and diameter.[2]

---

[1] The cold shuts were imported in diameters of 1 inch and ⅞ inch, with a six inch pitch (length).

[2] The lap links were imported in diameters of 1, ⅞, ¾ and 1⅛ inches, with a six inch pitch.

Exhibit 3 – a length of chain within which a lap link and cold shut have been assembled, and a hook has been attached to the cold shut.

The record establishes the following facts: Pacific Chain & Manufacturing Company is in the business of manufacturing round link and flat link chain. Johnstone had been associated with that firm for five years, supervising the manufacture of round link and flat link chain. His prior experience included manufacturing the machinery used for making flat link and round link chain; and also working as a machinist in building dies and other materials which went into a chain plant that stamped side bars and made parts for round link chains. It appears that Johnstone worked in the States of Washington, Oregon, and California, and had observed the use of cold shuts and lap links "out on the job" in conveyors and sawmills in connection with "breakdowns and other problems that exist in installation of the chain" (R. 11, 21).

The cold shut is a device used primarily for connecting chains, or for attaching a hook to a piece of chain.[3] In its imported condition, the cold shut is in an open configuration permitting insertion into a chain link. It can be closed with a hammer and "riveted over" so that it will not open up.

A lap link is used to join the two ends of a chain, or it may be installed to repair a broken chain by connecting the links together. Like a cold shut, the lap link is slipped into the chain and closed with a hammer.

When cold shuts and lap links are used to connect pieces of chain, or to connect the ends of chain, they function as a chain link. Also, when a cold shut is used at the end of a chain with a hook, it functions as a link in the chain.

Several cold shuts or lap links are never connected to make a chain.

THE COLD SHUTS AND LAP LINKS ARE PARTS OF CHAIN OR CHAINS

To be classifiable as parts of chain or chains within the purview of TSUS item 652.33, the imported articles must be "solely or chiefly used as a part." General Headnote 10 (ij). We are satisfied from the testimony and exhibits that the chief, if not the sole, use of the cold shuts and lap links is as a part of chains. When inserted into the link of a chain and closed, the cold shuts and lap links become, for all practical purposes, just another link in the chain.

The record shows (R. 27) :

Q. When Exhibit 2 is used as shown in Exhibit 3 to connect the links of two pieces of chain, is Exhibit 2 functioning as a link of the chain?—A. Yes; that is part of the chain.

---

[3] The witness testified that a cable may be attached to exhibit 1, but that in most cases he had observed cold shuts used with a hook, or used to hook chains together (R. 23).

Q. Now, if Exhibit 1 were used to connect two pieces of chain to end up as Exhibit 3, would it in this use be functioning as a link of the chain?—A. Yes; it would.

Q. Now, when Exhibit 1 is used at the end of the ˑchain with the hook, does it also function as a link of the chain?—A. Yes.

We have also noted the following definition of "cold shut" in *Webster's New International Dictionary*, Second Edition (1950):

cold shut. * * * A split ring or *link* used to mend or fasten chains. [Emphasis added.]

Even when the cold shut is used at the end of a chain to join a hook, it is apparent from exhibit 3 that the cold shut becomes virtually a link in the chain. If a chain were manufactured with a hook attached to the end link, plainly it would be incongruous to consider the end link as anything other than a chain link or part of the chain. Similarly, we see no reason to view any differently a cold shut used to attach a hook to a chain.

In *Gallagher & Ascher Co.* v. *United States*, 52 CCPA 11, C.A.D. 849 (1964), the court held certain auxiliary automobile heaters to be parts of automobiles, and commented (id. at 13–14):

As pointed out by the court below, whether a given article constitutes a part of another article depends upon the nature of the so-called part and, we might add, to some degree on the function and purpose of the so-called part in its relation to the article to which it attaches or with which it is designed to serve.

Hence, considering the function and purpose of the articles, which as indicated, are that of a link, such articles are "parts" of a chain or chains.

Defendant emphasizes in its brief that the testimony of plaintiff's witness is insufficient to establish chief use, inasmuch as his observations were limited to California, Oregon, and Washington, and there was no evidence that these states constituted the principal or only area of use. It is generally true, of course, that chief use must be established on the basis of testimony relating to an adequate cross section of the nation;[4] and that evidence limited to use in one state or one part of the country is insufficient to fulfill the territorial requirement of chief use in the absence of proof that the area of established use is the principal or only area of use of the article in issue.[5] Such stringent requirements of proof have, however, been somewhat relaxed in cases where it may fairly be inferred from the nature of the merchandise involved, the samples in evidence, and the testimony

[4] *D. Tobert Co., Inc., American Shipping Co.* v. *United States* 41 CCPA 161, C.A.D. 544 (1953).

[5] *Hoffschlaeger Company, Ltd., et al.* v. *United States,* 60 Cust. Ct. 497, 501, C.D. 3440, 284 F. Supp. 787, 790 (1968).

that the article would be put to the same use in all parts of the United States.

For example, in *Imported Merchandise Company* v. *United States*, 52 Cust. Ct. 313, Abstract 68437 (1964), the court stated (id. at 315) :

> Counsel for defendant argues, in his brief, that the record herein fails to establish chief use of the merchandise under consideration. Whether or not "chief use" has been properly established depends upon the issues and the evidence in each case, *United States* v. *F. W. Woolworth Co.*, 23 CCPA 98, T.D. 47765. While it is true that the testimony herein shows that the witness' observation concerning the use of the present merchandise is limited to a certain section of the United States, it is fair to say, from the evidence adduced herein, including the samples before us, that each of the items under consideration would be used in substantially the same manner, and by substantially the same class of people, in one section of the country as in another. Under such circumstances, chief use of the present merchandise is established under the rule, the *Woolworth* case, *supra*.

The above holding in *Imported Merchandise* is apposite to the present case. We are clear that it may be fairly inferred from the samples before the court, which significantly are themselves potent witnesses, and the testimony adduced, that the items under consideration would be used in substantially the same manner in one section of the country as another. Under these facts and circumstances, we have concluded that plaintiff's evidence is sufficient to make out a *prima facie* case, which shifted the burden of going forward with rebuttal evidence to the Government. Defendant, however, presented no evidence.

The protest is sustained, and judgment will issue accordingly.