(C.D. 4460)

GRIZZLY CORPORATION *v.* UNITED STATES

Court Nos. 71–10–01252 and 71–12–02023
Port of Chicago

(Decided June 28, 1973)

*Barnes, Richardson & Colburn* (*Peter J. Fitch* of counsel) for the plaintiff.
*Harlington Wood, Jr.*, Assistant Attorney General (*Patrick D. Gill*, trial attorney), for the defendant.

MALETZ, Judge: The problem in these actions is to determine the proper dutiable status of certain tractor tire chains that were manufactured in Norway and entered at the port of Chicago, Illinois, in 1969 and 1970. The importations were classified by the government under item 652.35 of the tariff schedules, as modified, T.D. 68–9, and assessed with duty at the rate of 15 percent or 13 percent ad valorem depending upon the date of entry. Plaintiff challenges these assessments and claims that the importations are properly dutiable under item 652.30, as modified, T.D. 68–9, at the rate of 0.4 cent per pound or 0.3 cent per pound depending upon the date of entry.

The tariff provisions involved are as follows:

> Chain and chains, and parts thereof, all the
> foregoing of base metal not coated or plated
> with precious metal:
>      Of iron or steel:
>       \*    \*    \*    \*    \*    \*    \*

Chain or chains (except the fore-
going) the links of which are of
stock essentially round in cross
section, and parts thereof:

\* \* \* \* \* \* \*

652.30      ⅜ inch or more but under ¾
inch in diameter_____ [1]

\* \* \* \* \* \* \*

652.35      Other, including parts_____ [2]

At the outset, it is to be observed that the parties have agreed in the pleadings that the imports are chains, the links of which are essentially round in cross section; that all the links in the chains (not including certain ringlike cleated objects sometimes hereafter referred to as "shoes") are of stock which is ⅜ inch or more but under ¾ inch in diameter; and that the tire chains in question are of iron or steel.

In this setting, the principal issue in the case is whether the "shoes" which constitute the center portion of the chains in question and are of stock that measures in excess of ¾ inch in diameter constitute "links" within the meaning of the superior heading to item 652.30 quoted above. If, as argued by the defendant, the "shoes" constitute links, then because their diameter is of stock that exceeds ¾ of an inch, the chains manifestly would not come within the purview of item 652.30 but rather would have been correctly classified by the government under item 652.35. On the other hand, if the "shoes" do not constitute links, as plaintiff insists, then the imported chains would be properly classifiable under item 652.30.

Considering the imported article in greater detail, examination of a "shoe" [3] shows that it is in the form of a ring which measures approximately 7¼ inches across. Welded to its circumference are four cleats (usually referred to as "lugs") that are equidistant from each other, with each lug measuring about 1½ inches in length and 1½ inches in width. Also welded to the circumference of the "shoe", adjacent to each lug, are four small ringlike loops. Interlocked to these loops are a series of various conventional chain links and accessories, such as small rings, screw pin shackles and hooks. The chains are connected in such a manner as to form cross chains and side chains which in turn can be mounted on the tractor tires. The "shoes", it is to be added, are not connected to each other but are connected to the links of the chain.

---

[1] Under item 652.30, the rate of duty for articles entered in 1969 is 0.4 cent per pound; for articles entered in 1970, the rate of duty is 0.3 cent per pound.

[2] Under item 652.35, the rate of duty for articles entered in 1969 is 15 percent ad valorem; for articles entered in 1970, the rate of duty is 13 percent ad valorem.

[3] Each tractor tire chain contains 14 "shoes".

According to the testimony of the witnesses,[4] the imported chains are used primarily by the logging industry as traction-producing devices on the tires of a type of tractor called a skidder—which is a four-wheel drive machine that skids or drags logs out of the woods. The center portion of the chains, i.e., the "shoes"—fitted as they are with cleats which dig into the ground—are the primary traction-producing portion of the tire chains, and the function of the balance of the assemblies comprising the tire chains in issue is to hold the "shoes" in place on the tractor tire. In addition, the chain portions provide a very small incidental amount of tractive power.

The "shoes" have not been referred to as links by anyone to whom the witnesses have spoken. Rather, such "shoes" are referred to as "shoes", "ring cleats", "rings" or "grousers". Thus, corresponding portions of similar chains produced by a Maine chain manufacturer are referred to by that company as "rings". Further, tire chains that incorporate "shoes", "cleats" or similar traction devices are referred to, known as, and advertised as "ring type" chains, while tire chains utilizing only link-type cross chains for traction are referred to, known as, and advertised as "link type" chains. This distinction between "ring type" tire chains and "link type" tire chains extends to the public as well as the trade.

The welded chain on the imported article is made by an automated process on chain-making machinery which forms the links from wire, interlocks the links, and welds them shut. On the other hand, the "rings" or "shoes" on the tire chains in question are not made on chain-making machinery but rather are made by rolling round bar stock of steel onto a mandril, forming a spiral which is then sawed. The resulting pieces of steel are then welded together to form completed circles of steel. The lugs and loops are then welded onto these rings, thus completing the "shoes".

We consider now the meaning to be accorded to the term "links". Since no question of commercial designation is involved here, the common meaning of the term will control in the absence of a demonstrated contrary legislative intent. *Marshall Field & Co.* v. *United States*, 45 CCPA 72, C.A.D. 676 (1958) ; *United States* v. *Mercantil Distribuidora, et al.*, 43 CCPA 111, C.A.D. 617 (1956). The common meaning of a tariff term is, of course, a question of law for the court and in determining that meaning, the court may receive testimony of witnesses, which is advisory only, and consult lexicons and other relevant authorities. *E.g.*, *Trans-Atlantic Company* v. *United States*,

---

[4] Two witnesses testified for the plaintiff—one of whom was the president of the plaintiff-company, while the other headed a domestic manufacturing firm that produced various types of chains, including chains that are similar to those in issue here. Defendant did not call any witnesses.

60 CCPA 100, C.A.D. 1088 (1973); *United States* v. *National Car-loading Corp., et al.*, 48 CCPA 70, C.A.D. 767 (1961); *United States* v. *O. Brager-Larsen*, 36 CCPA 1, C.A.D. 388 (1948).

The term "link" has been defined as follows:

*Britannica World Language Dictionary* (1963 ed.):

link—n. 1. One of the loops of which a chain is made; hence, something which connects separate things; a tie. * * * 3. A single constituent part of a continuous series. * * *

*Webster's New International Dictionary, Second Edition* (Unabridged, 1960):

link—n. * * * 1. A single ring or division of a chain * * *.

\*     \*     \*     \*     \*     \*     \*

3. Anything analogous to a link of a chain in form, function, or arrangement * * *.
4. Something which binds together or connects things.

\*     \*     \*     \*     \*     \*     \*

*Funk and Wagnalls New Standard Dictionary of the English Language* (1941 ed.):

link—1. One of the rings or loops of which a chain is made; anything doubled or closed together like such a link; hence, something which connects separate things; a bond; a tie. * * *

Helpful also is the following statement in *The Encyclopedia Americana* (1953 ed.), Vol. 6, p. 246, which discusses chains and chainmaking as follows:

A chain consists of a series of similar links which either interlock or are joined to each other so that they form a continuous flexible metal line. * * *

Against this background, we think it clear that the "shoes" in question neither resemble nor are analogous to chain links in form and are not joined in the same manner as links. Further, the "shoes" do not function as links; instead, as observed previously, their main function is to serve as traction-producing devices. In short, the primary purpose of the "shoes" is not to link anything, and they do not connect anything except incidentally, whereas, the principal function of a link is to form a chain rather than to act as a traction-producing device. On this latter aspect, it is to be noted that both witnesses testified without contradiction that the function of the rest of the tire-chain assembly was only to hold the "shoes" to the tractor tire and keep the "shoes" in place. Thus, contrary to connecting separate things or binding something together, it is the "shoes" which are the things that are bound and connected by the tire-chain assembly.

Moreover, the "shoes" in question are not arranged in a manner analogous to links of chain. Nor is each "shoe" one of a series of

interlocked units, each of which is similar to the one adjoining it. While it is true that the "shoes" are attached to the cross chains, they are not interlinked in the same manner as chain links; they are not doubled over or closed together like such a link; and they are not interlinked with each other to form a chain of "shoes".

Not without significance, also, is the testimony of the two witnesses that in their experience in dealing in the tire chains in question, in selling such tire chains, and in exhibiting such tire chains, the persons with whom they have discussed the chains have never referred to the "shoes" of these chains as "links" of the tire chains. Thus, the president of the plaintiff-company testified that he has sold and exhibited the tire chains in question "throughout the continental United States, practically from coast to coast"; that he has discussed the type of chains in question with "conservatively thousands [of people] since 1969", including members of the general public as well as the industry; and that the "shoes" have never been referred to by anybody as a link. The second witness who has sold and exhibited the chains in question in the New England area, and who has been in the chain business for 25 years, corroborated the lack of designation of the term "link" in connection with the "shoes" of the tire chains in issue by those to whom he has spoken. The evidence before the court, therefore, is that, based upon those members of the industry and of the public whose views are known to the witnesses, the "shoes" of the tire chains in issue are not known as, or referred to, as "links". The "shoes" may have been referred to in various ways by those persons but in no instance were the "shoes" referred to as "links". There is no testimony to the contrary before the court, and the evidence stands unrebutted.

Relevant, too, is that the witnesses' uncontradicted testimony and the exhibits in the record demonstrate that tire chains utilizing "shoes", "rings" or similar traction-producing devices are referred to and advertised as "ring type chains", while tire chains utilizing only link-type cross chains for traction are referred to and advertised as "link type chains". These factors provide further indication that the chain industry, the logging industry, those who buy and use the tire chains in question and members of the public differentiate between a "shoe" or other traction device and a "link", and that the terms are not synonymous.

To sum up, considering (i) the lexicographic definitions of the term "link", (ii) the uncontroverted testimony that members of the chain industry, the logging industry and the general public do not refer to the "shoes" as "links", and (iii) the fact that tire chains which utilize "shoes", "rings" or similar traction-producing devices are referred to and advertised as "ring type chains", while those tire chains which

utilize only link-type cross chains for traction are referred to and advertised as "link type chains", it must be concluded that the "shoes" of the tire chains in question are not "links" of those tire chains within the common meaning of the term "links" as that term is used in the superior heading to item 652.30, the claimed provision.

Misplaced is defendant's reliance on *Border Brokerage Co., Inc.* v. *United States*, 64 Cust. Ct. 458, C.D. 4020 (1970), and *C. J. Tower & Sons* v. *United States*, 48 Treas. Dec. 220, T.D. 41118 (1925). In *Border Brokerage*, articles described as cold shuts and lap links, which were found by the court to serve as chain links for all practical purposes, were held to be classifiable under item 652.33 as parts of chains. The cold shuts in that case were used for connecting chains or for attaching a hook to a piece of chain, while the lap links were used to join the two ends of a chain or to repair a broken chain by connecting the links together. As Judge Newman, speaking for the court in *Border Brokerage*, noted (id. at 461):

> Even when the cold shut is used at the end of a chain to join a hook, it is apparent from exhibit 3 that the cold shut becomes virtually a link in the chain. If a chain were manufactured with a hook attached to the end link, plainly it would be incongruous to consider the end link as anything other than a chain link or part of the chain. Similarly, we see no reason to view any differently a cold shut used to attach a hook to a chain.

The short of the matter is that the articles in *Border Brokerage* were fastening devices used to connect pieces of chain or to connect the ends of a chain. Such articles are, of course, analogous to links of chain in form, function and arrangement. Here, on the other hand, the primary function of the "shoes" is to serve as a traction-producing device. They do not connect anything except incidentally; they are not interlinked in the same manner as chain links; and instead of connecting separate things or binding something together, as was the situation in *Border Brokerage*, it is the "shoes" which are the things that are bound and connected by the tire-chain assembly.

Defendant's reference to *C. J. Tower & Sons* v. *United States, supra*, is similarly without merit. *C. J. Tower* is cited by defendant as standing for the proposition that "chain can be composed of links of varying sizes and still [be] classified and considered to be chain". Also, defendant cites language from *C. J. Tower* which states that "[i]t is a matter of common knowledge that virtually all chains devoted to specific uses have some special link, ring, hook, swivel, or similar device to permit fastening the chain to the object." 48 Treas. Dec. at 221. However, we fail to see how the presence of a special or added device for fastening the chain to an object bears on the present case. For here we are not concerned with mere fastening devices. Rather, we are con-

cerned with the fact that chains are made up of chain links and other parts which are not links. And the single conclusion reached here is that the "shoes" of the chains in question are among the other parts which are not links.

For the foregoing reasons, plaintiff's claim that the imported merchandise is properly assessable under item 652.30 is sustained. Judgment will be entered accordingly.